1   BRANCART & BRANCART
        Christopher Brancart (SBN 128475)
2       Elizabeth Brancart (SBN 122092)
    Post Office Box 686
3   Pescadero, CA 94060
    Tel:    (650) 879-0141
4   Fax:    (650) 879-1103
    cbrancart@brancart.com
5   ebrancart@brancart.com

6   Attorneys for Plaintiffs

7

8                   **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10
    **EDITH MACIAS, individually and on**     )    **Case No. C07-3437 JSW**
11  **behalf of similarly situated**          )
    **individuals; HOTON DURAN;**             )    **PLAINTIFFS' OPPOSITION TO**
12  **TIFFANY HUYNH; AURA MENDIETA;**         )    **MOTION TO DISMISS BY**
    **WILLIAM LABOY; MIGUEL ACOSTA;**         )    **DEFENDANT MARK GARIBALDI,**
13  **CRUZ ACOSTA; CUAUHTEMOC**               )    **INDIVIDUALLY AND DBA THE**
    **TORAL; and TERESA VILLEGAS,**           )    **GARIBALDI COMPANY**
14                                            )
15               **Plaintiffs,**             )    **CLASS ACTION**
                                              )
16          **vs.**                           )    **Hearing:**
                                              )    **Date:       January 11, 2008**
17  **THOMAS J. TOMANEK; and**                )    **Time:       9:00 a.m.**
    **MARK GARIBALDI, individually**          )    **Room:       Courtroom of the**
18  **and doing business as THE**             )    **            Hon. Jeffrey S. White**
    **GARIBALDI COMPANY,**                    )
19                                            )
20               **Defendants.**             )
    _____  )
21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

1

1

**TABLE OF CONTENTS**

2    I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3    II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    III.  FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5    IV.  SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6    V.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7          A.  Defendant's Motion to Dismiss Should be Denied Because
8          Plaintiffs' First Amended Complaint States a Claim under RICO . . . . . . . . . . . . 5

9             1.  Legal Standard on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . 5

10             2.  RICO Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11             3.  Plaintiffs' Allegations Establish Violations of RICO by Mail Fraud. . . . 7

12                 a.  The mailings were in furtherance of the scheme to defraud . . 7

                b.  The mailings need not have been intended to deceive . . . . . 10

13             4.  Plaintiffs' Allegations Satisfy the RICO "Continuity" Requirement . . 11

14             5.  Plaintiffs' Allegations Satisfy RICO's Proximate Cause
15             Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

16          B.  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction
17          Should be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18    VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW**

ii

1

**TABLE OF AUTHORITIES**

2

*Cases*

3

Adee Motor Cars, LLC v. Amato, 388 F. Supp. 2d 250 (S.D.N.Y. 2005) . . . . . . . . . . 10

4

Allwaste, Inc. v. Hecht, 65 F.3d 1523 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 14

5

Conley v. Gibson, 355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

6

Garrick-Aug Assoc. Store Leasing, Inc. v. Hirschfeld
    652 F. Supp. 905 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7

8

Gilligan v. Jamco Develop. Corp., 108 F.3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . .5

9

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) . . . . . . . . . . . 5, 11

10

Howard v. America Online, Inc., 208 F.3d 741 (9th Cir. 2000) . . . . . . . . . . . . . . . . 13

11

Ikuno v. Yip, 912 F.2d 306 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12

Miller v. Yokohama Tire Corp., 358 F.3d 620 (9th Cir. 2004) . . . . . . . . . . . . . . . . 9, 14

13

Moses v. Martin, 360 F. Supp. 2d 533 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . 10

14

Pareto v. FDIC, 139 F.3d 696 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

15

Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . 5

16

Religious Technology Center v. Wollersheim, 971 F.2d 364 (9th Cir. 1992) . . . . . . . 14

17

Schmuck v. United States, 489 U.S. 705 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

18

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . .6

19

Sosa v. DIRECTV, Inc., 437 F.3d 923 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . 10, 11

20

Ticor Title Insur. Co. v. Florida, 937 F.2d 447 (9th Cir. 1991) . . . . . . . . . . . . . . . . . 14

21

United States v. Lo, 231 F.3d 471 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22

United States v. Miller, 676 F.2d 359 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . 9

23

United States. v. Munoz, 233 F.3d 1117 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . 7, 11

24

United States v. Woods, 335 F.3d 993 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . .  7

*Statutes*

25

26

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

27

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

18 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ca. Civil Code § 1950.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

1

### I.  INTRODUCTION

2      Defendant Mark Garibaldi, individually and doing business as The Garibaldi

3  Company, has filed a motion to dismiss the federal RICO claim from plaintiffs' first

4  amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

5  Rules of Civil Procedure, and to dismiss the remaining state claims for lack of subject

6  matter jurisdiction pursuant to Rule 12(b)(1).  (Doc. # 22.)  Defendant's motion should

7  be denied in its entirety because plaintiffs' allegations state a claim under RICO, and

8  the Court should exercise supplemental jurisdiction over plaintiffs' state law claims

9  because they, together with the RICO claims, form only one case or controversy.

10

### II.  PROCEDURAL BACKGROUND

11      Plaintiff Edith Macias, on behalf of herself and a class of similarly situated

12  persons, and plaintiffs Hoton Duran, Tiffany Huynh, Aura Mendieta, William Laboy,

13  Miguel Acosta, Cruz Acosta, Cuauhtemoc Toral and Teresa Villegas filed this action

14  against defendants Mark Garibaldi, individually and doing business as The Garibaldi

15  Company (collectively referred to as "Garibaldi"), and Thomas J. Tomanek.  Plaintiffs

16  are former tenants of the Rancho Luna & Rancho Sol Apartments, a large rental

17  complex located in Fremont, California.  Defendant Tomanek is the owner of the

18  complex, and Garibaldi is the property manager.  (Doc. # 19, ¶¶ 4-14.)  Plaintiffs allege

19  that defendant Garibaldi violated the Racketeer Influenced and Corrupt Organizations

20  Act ("RICO"), 18 U.S.C. § 1961 et seq., by engaging in a scheme of misrepresentation

21  and other unlawful acts in connection with obtaining and retaining tenants' security

22  deposits and demanding additional payments for alleged property damage upon move-

23  out.  Plaintiffs allege related state claims against both Garibaldi and Tomanek.

24      Defendant Garibaldi previously filed a motion to dismiss plaintiffs' complaint

25  pursuant to Rule 12(b)(6) for failure to state a claim under RICO, and to dismiss

26  plaintiffs' remaining claims for lack of subject matter jurisdiction pursuant to Rule

27  12(b)(1).  (Doc. # 11.)  Defendant Thomas J. Tomanek filed a motion to dismiss for lack

28  of subject matter jurisdiction pursuant to Rule 12(b)(1).  (Doc. # 7.)

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW**

1    Rather than respond to the motions, plaintiffs filed a first amended complaint on

2    September 28, 2007.  (Doc. # 19 ["FAC"].)  The first amended complaint added two new

3    plaintiffs, Marina Duran and Kapika Salambue, also former residents of defendants'

4    property, and addressed the deficiencies alleged by defendants to exist with respect to

5    plaintiffs' RICO claims.  Defendants have now moved to dismiss the first amended

6    complaint.  (Doc. # 22 [Garibaldi], # 20 [Tomanek].)

7                              **III.  FACTUAL ALLEGATIONS**

8    The first amended complaint describes an alleged scheme by Garibaldi to

9    defraud tenants out of the rightful return of their security deposits, as required by

10   California Civil Code § 1950.5.  Pursuant to Civil Code § 1950.5(e), a landlord "may not

11   assert a claim against the tenant or the security for damages to the premises or any

12   defective conditions that preexisted the tenancy, for ordinary wear and tear or the

13   effects thereof, whether the wear and tear preexisted the tenancy or occurred during

14   the tenancy, or for the cumulative effects of ordinary wear and tear occurring during any

15   one or more tenancies."[1]

16   Each of the eleven plaintiffs, residing in eight separate households, alleges that

17   they were victims of Garibaldi's scheme to defraud, based on facts similar to those

18   alleged by plaintiffs Edith Macias and Hoton Duran:

19           On October 21, 2004, plaintiffs Edith Macias and Hoton Duran
             entered into a written lease agreement with The Garibaldi Company at the
20           Rancho Luna & Rancho Sol Apartments for rental of apartment 246 in the
             Rancho Luna section of the complex. Plaintiffs were assisted in the
21           execution of the lease agreement by an individual, whom plaintiffs are

22   _____

23           [1]A landlord may claim from a tenant's security deposit only those amounts as are
     reasonably necessary (1) to compensate the landlord for a tenant's default in the
24   payment of rent; (2) to repair damages to the premises, exclusive of ordinary wear and
     tear, caused by the tenant or by a guest or licensee of the tenant; (3) to clean the
25   premises upon termination of the tenancy as necessary to return the unit to the same
     level of cleanliness it was in at the inception of the tenancy; or (4) to remedy future
26   defaults by the tenant in any obligation under the rental agreement to restore, replace,
     or return personal property or appurtenances, exclusive of ordinary wear and tear, if the
27   security deposit is authorized to be applied thereto by the rental agreement.  California
     Civil Code § 1950.5(e).
28

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,**
**INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW**

2

1   informed and believe was an employee of The Garibaldi Company, who
    countersigned the lease agreement on behalf of The Garibaldi Company.
2   Pursuant to the agreement, Ms. Macias and Mr. Duran paid $1,700 as a
    security deposit before commencing their tenancy. Under the terms of the
3   agreement, The Garibaldi Company agreed to return the $1,700 security
    deposit by mail within three weeks of the tenants' vacating the unit, less
4   any charges for damage to the premises, fixtures or furnishings, but not
    including charges for reasonable wear and tear.
5
        In giving The Garibaldi Company the $1,700 security deposit, Ms.
6   Macias and Mr. Duran reasonably relied on The Garibaldi Company to
    abide by the terms of its representations in the lease agreement and the
7   law, including California Civil Code § 1950.5(e), and not to charge them
    for reasonable wear and tear to the unit.
8
        The representation of The Garibaldi Company in the lease
9   agreement that it would not charge Ms. Macias and Mr. Duran for
    reasonable wear and tear to the unit was false, or made with reckless
10  disregard to its falsity, because The Garibaldi Company intentionally
    followed a policy and practice of unlawfully charging vacating tenants for
11  reasonable wear and tear to their unit.

12      On November 1, 2005, Ms. Macias and Mr. Duran vacated
    apartment 246. Before vacating that apartment, Ms. Macias and Mr.
13  Duran requested an initial inspection by defendants. The purpose of that
    inspection was to allow Ms. Macias and Mr. Duran the opportunity to
14  remedy deficiencies identified by defendants in order to avoid deductions
    from his security deposit. But defendants failed or refused to conduct that
15  inspection in accordance with California Civil Code § 1950.5(f)(1). At the
    time that Ms. Macias and Mr. Duran vacated apartment 246, that dwelling
16  had been returned to the same condition, except for normal wear and
    tear, and same level of cleanliness as it was at the inception of their
17  tenancy.

18      Nonetheless, defendants unlawfully, and acting in bad faith,
    charged $2,818.75 for cleaning and damage to apartment 246, deducting
19  that sum from the security deposit paid by Ms. Macias and Mr. Duran.
    Defendants retained, and continue to retain, the full amount of plaintiffs'
20  security deposit. Because the charges exceed the amount of the security
    deposit, defendants claim that Ms. Macias and Mr. Duran owe defendants
21  $1,160.75.

22  (FAC ¶¶ 17-21 and ¶¶ 22-59.)

23      Plaintiffs allege that Garibaldi retained the full amount of the security deposit

24  given by seven of the eight plaintiff households. (FAC ¶¶ 21, 31, 36, 41, 47, 52, 58.)

25  Plaintiff Tiffany Huynh received back only $50.45 of her $400 deposit. (FAC 26.) After

26  the filing of this lawsuit, and over one year after they vacated their unit, plaintiffs Miguel

27  and Cruz Acosta received a check from Garibaldi representing a return of $848.08 of

28  their $1,150 deposit, and a statement to the effect that the accounting of the damages

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

3

1    assessed against their security deposit had been in error.  (FAC ¶ 42.)  Garibaldi

2    demanded payment of amounts above and beyond the security deposit it had retained

3    from six of the eight plaintiff households.  (FAC ¶ 21, 31, 36, 41, 52, 58.)  One plaintiff,

4    Marina Duran, paid $985.86 to defendant beyond the $99 security deposit it had

5    retained so that she would not be sent to collections.  (FAC ¶ 59.)  Three of the plaintiff

6    households were contacted by a collections agent seeking payment of the additional

7    amounts Garibaldi claimed were due.  (FAC ¶ 21, 31, 53.)  At least one plaintiff, Edith

8    Macias, has had the alleged debt appear on her credit report as "in collection."  (FAC ¶

9    21.)  None of the plaintiffs has received his or her full security deposit back.

10                        **IV.  <u>SUMMARY OF ARGUMENT</u>**

11           Defendant's motion to dismiss should be denied because plaintiffs' first

12    amended complaint alleges the elements necessary to state a claim for relief under

13    RICO based on predicate acts of mail fraud.  Plaintiffs have alleged that, upon move-in,

14    they provided Garibaldi with significant security deposits based on the

15    misrepresentation that they would not be charged for the ordinary wear and tear on the

16    property.  Later, when they vacated the apartments, plaintiffs allege that they were, in

17    fact, charged for the ordinary wear and tear to the property, often in amounts greater

18    than the security deposit.  Plaintiffs allege a scheme to defraud based on the

19    misrepresentations made to them to induce them to part with their security deposits,

20    and that Garibaldi used the U.S. mails in furtherance of that scheme by mailing the

21    security deposit closing statements to plaintiffs.

22           Contrary to defendant's argument, the facts alleged by plaintiffs are sufficient to

23    establish the RICO predicate acts of mail fraud.  Defendant argues that the mailings by

24    Garibaldi did not themselves contain misrepresentations, and therefore cannot form the

25    basis for mail fraud.  That argument misreads the mail fraud statute, 18 U.S.C. § 1341.

26    It is well-settled that the mailings that satisfy the use of the mails requirement for mail

27    fraud do not themselves need to contain misrepresentations – they only need to be

28    made in furtherance of a scheme to defraud.  <u>Schmuck v. United States</u>, 489 U.S. 705,

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

4

1   710-11 (1989).  Here, plaintiffs allege that they relied on misrepresentations made by

2   Garibaldi, and that the subsequent mailings were in furtherance of Garibaldi's scheme

3   to defraud.  That is sufficient for mail fraud.

4        Defendant also argues that plaintiffs have failed to allege a RICO pattern

5   because the mailings were made within a three-month period.  Once again, defendant

6   focuses on the mailings, not the scheme to defraud.  As alleged by plaintiffs, the

7   scheme to defraud, pursuant to which defendant used the mails, extended over a

8   number of years, satisfying the RICO pattern requirement by showing closed-ended

9   continuity.  H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239-43 (1989).

10  The facts alleged by plaintiffs also show that the scheme was part of Garibaldi's regular

11  way of doing business, thus giving rise to the inference that the alleged fraudulent

12  scheme would continue into the future, and showing open-ended continuity.  Id. at 243.

13  Accordingly, plaintiffs have alleged a pattern of conduct in violation of RICO.

14       Finally, defendant argues that plaintiffs cannot show that the RICO violation has

15  caused their injuries because the mailings did not contain misrepresentations.  Because

16  there is no need for the mailings to contain misrepresentations to be part of an act of

17  mail fraud, this argument, too, must fail.

18                              **V.  ARGUMENT**

19  **A.  Defendant's Motion to Dismiss Should be Denied Because Plaintiffs'**
20  **First Amended Complaint States a Claim under RICO.**

21              ***1.  Legal Standard on a Motion to Dismiss.***

22       "The motion to dismiss for failure to state a claim is viewed with disfavor and is

23  rarely granted."  Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). The

24  complaint must be construed in the light most favorable to the plaintiff, Parks Sch. of

25  Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995), and "should not be

26  dismissed . . . unless it appears beyond a doubt that the plaintiff can prove no set of

27  facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355

28  U.S. 41, 45-46 (1957).  The court must accept as true all material allegations in the

complaint, as well as reasonable inferences to be drawn from them.  Pareto v. FDIC,

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,**
**INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW**

5

1    139 F.3d 696, 699 (9th Cir. 1998).

2    **2. *RICO* Elements.**

3    Plaintiffs allege that Garibaldi has violated RICO in the course of his property

4 management on behalf of Thomas Tomanek.  (FAC ¶¶ 67-74.)  RICO provides, in

5 pertinent part, that:

6      It shall be unlawful for any person employed by or associated with any
7      enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or
8      collection of unlawful debt.

9    18 U.S.C. § 1962(c).  A violation of RICO by way of § 1962(c) requires (1) conduct (2)

10 of an enterprise (3) through a pattern (4) of racketeering activity.  18 U.S.C. § 1962(c);

11 <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

12    Plaintiffs' first amended complaint meets the RICO pleading requirements.

13 Plaintiffs allege that Thomas Tomanek is the RICO "enterprise," that Garibaldi is

14 "associated" with the enterprise, and that Garibaldi has conducted or participated in the

15 affairs of the enterprise through a pattern of racketeering activity within the meaning of

16 18 U.S.C. § 1961(5), namely violations of 18 U.S.C. § 1341 (mail fraud).  (FAC ¶¶ 67-

17 70.)  Plaintiffs further allege that Garibaldi has knowingly, wilfully and intentionally

18 devised and implemented a scheme or artifice to defraud, or for obtaining money or

19 property from tenants of Rancho Sol and Rancho Luna Apartments by means of false

20 or fraudulent pretenses, representations or promises within the meaning of 18 U.S.C. §

21 1341, and that, in furtherance of that scheme, Garibaldi uses the United States mails.

22 (FAC ¶ 70.)  The specific acts of mail fraud are alleged with particularity in paragraph

23 71 of the first amended complaint.  (FAC ¶ 70(a)-(i).)

24    Defendant does not challenge plaintiffs' allegations naming Tomanek as the

25 enterprise or their allegations that Garibaldi is associated with the enterprise.  Nor does

26 defendant claim that plaintiffs have failed to allege their RICO fraud allegations with the

27 particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Rather,

28 defendant argues that plaintiffs' first amended complaint must be dismissed with

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,**
**INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW**

6

1  prejudice for flaws in the mail fraud allegations, the pattern allegations and for failure to
2  show injury proximately caused by the RICO violation. (Motion 7-12.)  As discussed
3  below, plaintiffs' allegations satisfy each of these RICO requirements.

4  ### 3. *Plaintiffs' Allegations Establish Violations of RICO by Mail Fraud.*

5  Defendant contends that plaintiffs' first amended complaint fails to state a claim
6  under RICO because plaintiffs' mail fraud allegations are fundamentally flawed in two
7  ways:  (1) the mailings were not in furtherance of the scheme to defraud; and (2)
8  defendant could not have intended plaintiffs to rely upon the statements in the mailings.
9  (Motion at 7-10.)  Defendant's argument is premised on an overly strict view of the
10  connection a mailing must play in the scheme to defraud.

11  a.  The mailings were in furtherance of the scheme to defraud.

12  Racketeering activity includes any act which is indictable under the federal mail
13  fraud statute, 18 U.S.C. § 1341.  18 U.S.C. § 1961(1).  Mail fraud can take the form of
14  (1) a scheme or artifice to defraud, or (2) obtaining money or property by means of false
15  or fraudulent pretenses, representations, or promises.  United States v. Woods, 335
16  F.3d 993, 1000 (9th Cir. 2003).  Each of those forms constitutes an independent and
17  alternate basis for proving a violation.  Id.  Plaintiffs have alleged both.  (FAC ¶ 70.)
18  The elements of mail fraud are: (1) proof of the scheme to defraud, and (2) using or
19  causing the use of the mails in order to further the fraudulent scheme.  United States. v.
20  Munoz, 233 F.3d 1117, 1129 (9th Cir. 2000).  However, "the use of the mails need not
21  be an essential element of the scheme" to be part of the execution of the fraud.
22  Schmuck v. United States, 489 U.S. at 710.  It is sufficient for the mailing to be "incident
23  to an essential part of the scheme, [citation omitted], or a step in [the] plot."  Id. at 710-
24  11 (quotations omitted).

25  Defendant contends that his mailing of the security deposit closing statements
26  could not have been in furtherance of the scheme to defraud because, rather than
27  "tricking" plaintiffs, they were simply notifications of the amounts withheld.  Examination
28  of the facts of Schmuck shows the error in defendant's argument that the mailings in

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,**
**INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW**

1  this case were not in furtherance of alleged scheme to defraud.  In <u>Schmuck</u>, the

2  defendant was charged with mail fraud by devising and executing a scheme to defraud

3  car buyers by marketing cars with "turned back" odometers to retail car dealers.  489

4  U.S. at 712.  As part of the sale of the cars by those retail dealers to their customers,

5  the dealers mailed title applications to the state motor vehicle department.  <u>Id.</u>  Those

6  mailings provided the use of the mails element of the mail fraud conviction.  Defendant

7  argued that his conviction should be overturned because the mailings on which it was

8  based were "routine" and "innocent" in and of themselves, and "merely tangentially

9  related to the fraud."  <u>Id.</u> at 711.

10      The Supreme Court rejected that argument, finding that the defendant's scheme

11  to defraud depended on the successful passage of the car titles, and stating:

12      Thus, although the registration-form mailings may not have contributed
       directly to the duping of either the retail dealers or the customers, they
13      were necessary to the passage of title, which in turn was essential to the
       perpetration of [the defendant's] scheme. . . . [a] mailing that is 'incident
14      to an essential part of the scheme,' [ ], satisfies the mailing element of the
       mail fraud offense.  The mailings here fit this description.

15  <u>Id.</u> at 712 (citations omitted).  Routine mailings that are "innocent" – ones that contain
16
    no false information – may supply the mailing element of mail fraud.  <u>Id.</u> at 715.  The
17
    Court also rejected the defendant's contention that mailings that someday may
18
    contribute to the uncovering of a fraudulent scheme cannot supply the mailing element
19
    of the mail fraud offense.  <u>Schmuck</u>, 489 U.S. at 715.  The question at all times is
20
    whether the mailing is part of the scheme conceived by the perpetrator at the time,
21
    regardless of whether the mailing later may have been counterproductive to the
22
    scheme.  <u>Id.</u>
23
        In a similar vein, in <u>United States v. Lo</u>, 231 F.3d 471, 477-79 (9th Cir. 2000), the
24
    Ninth Circuit upheld the mail fraud conviction of a real estate broker based on
25
    fraudulent real estate transactions where the mailings forming the basis for the charge
26
    were made by the County Recorder after a fraudulent loan application was funded and
27
    the deeds recorded.  A mailing taking place after the defendant has already obtained
28
    the money it expects to get can still be "incident to an essential part of the scheme"

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW**

8

1    where it is part of the execution of the scheme.  A mailing is an incident to an essential

2    part of a scheme where the transaction is not complete without it.  See, e.g., Lo, 231

3    F.3d at 477-79 (scheme not complete until County Recorder mailed deeds); United

4    States v. Miller, 676 F.2d 359, 362 (9th Cir. 1982) (same).

5         Here, like in Schmuck and Lo, defendant's mailings were a necessary step in

6    asserting the claim to the security deposit, or for additional funds, which was in turn

7    essential to defendant's scheme.  Defendant legally could make no claim against the

8    security deposit or demand additional funds unless the security deposit statement was

9    mailed to the vacating tenant.  Those mailings were in furtherance of the scheme to

10   defraud because the use of the United States mails was contemplated, foreseeable and

11   incident to an essential part of the scheme – asserting defendant's claim to some or all

12   of the security deposit and for any additional funds due under Civil Code § 1950.5.

13        Defendant relies on Garrick-Aug Assoc. Store Leasing, Inc. v. Hirschfeld, 652 F.

14   Supp. 905 (S.D.N.Y. 1986), to support his argument that mailings that are merely

15   "confirmatory in nature" cannot form the basis for mail fraud.  (Motion at 8-9.)  In

16   Garrick-Aug, the district court ruled that letters notifying the victim that certain account

17   set offs had been made were "simply notifications" that were not in furtherance of the

18   scheme to defraud, and thus could not form the basis for mail fraud.  Id. at 906.

19   Garrick-Aug, however, does not remain good law with respect to the contours of mail

20   fraud since it predates the Supreme Court's decision in Schmuck.  Defendant also cites

21   Miller v. Yokohama Tire Corp., 358 F.3d 620 (9th Cir. 2004), in support of his assertion

22   that his mailing of the security deposit accounting statement was merely "confirmatory

23   in nature" and therefore cannot constitute mail fraud, and that "defendants could not

24   reasonably have expected plaintiff to rely on them").  (Motion at 8.)  Miller is inapposite.

25   In that case, the Ninth Circuit found that the victims could not reasonably rely on the

26   statements because the misrepresentations, if any, were representations of law, not

27   fact.  Miller, 358 F.3d at 621.  Thus, the fact that the mailings in this case were notices

28   sent to plaintiffs regarding the amounts of money being withheld or charged, does not

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

9

1    affect whether the mailings were in furtherance of the scheme to defraud.

2                        b.   The mailings need not have been intended to deceive.

3          In a related vein, defendant argues that the mailings cannot supply the use of the

4    mails element of mail fraud because defendant could not reasonably have expected

5    that plaintiffs would rely on those mailings to their detriment.  (Motion at 8-9.)

6    Specifically, defendant argues that because the content of the security deposit mailings

7    related to the condition of plaintiffs' own apartments, defendant could not have intended

8    plaintiffs to be "deceived" by them, and therefore lacked the necessary intent to commit

9    mail fraud.  (Motion at 9-10.)  However, the content of the mailing itself does not need

10   to be calculated to deceive in order to trigger the mail fraud statute.

11         Contrary to defendant's assumption, when a RICO claim is based on mail or wire

12   fraud, the telephone calls or mailings need not have contained misrepresentations

13   themselves.  Adee Motor Cars, LLC v. Amato, 388 F. Supp. 2d 250, 254 (S.D.N.Y.

14   2005); Moses v. Martin, 360 F. Supp. 2d 533, 548 (S.D.N.Y. 2004).  Rather, plaintiffs

15   must assert merely that the use of the mails or the wires was accomplished in

16   furtherance of the scheme alleged, which was itself fraudulent.  Adee, 388 F. Supp. 2d

17   at 254.  "It is the fraudulence of the scheme itself, not any individual falsehood in any

18   particular mail or wire communication that must be alleged."  Adee, 388 F. Supp. 2d at

19   254.  See also Schmuck, 489 U.S. at 715 (mailings that contain no false information

20   may supply the mailing element of mail fraud).

21         Defendant relies on Sosa v. DIRECTV, Inc., 437 F.3d 923, 941 (9th Cir. 2006),

22   for the proposition that defendant lacked the requisite intent to commit mail fraud

23   because he could not have intended that plaintiffs would be deceived by the security

24   deposit accounting statements.  (Motion at 9.)  In Sosa, the satellite television

25   broadcaster sent thousands of demand letters out to consumers alleging that the

26   consumers had accessed the satellite signal illegally and would be sued if they did not

27   settle DIRECTV's claims against them.  Id. at 925-26.  The plaintiff brought a RICO

28   class action, alleging that the letters contained both legal and factual

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

10

1    misrepresentations, actionable under the mail and wire fraud statutes. Id. at 940.

2        The Ninth Circuit found that the legal misrepresentations were not actionable,

3    and that the factual misrepresentations, because they involved allegations regarding

4    the recipient's own conduct, were not of a type that would likely deceive the recipient.

5    Id. at 940-41.  Accordingly, the defendant could not have had an intent to commit mail

6    fraud because there was no intent to deceive the recipient.  Id. at 941-42.

7        In contrast, in this case, the alleged misrepresentations were made by Garibaldi

8    at the time of the parties entered into the lease, not in the mailings themselves.  As

9    alleged in the first amended complaint, plaintiffs were deceived by defendant's

10   misrepresentation at the time they gave Garibaldi their security deposits.  Plaintiffs

11   relied on the representation that was false, or made with reckless disregard to its falsity,

12   that they would not be charged for ordinary wear and tear to the property.[2]  (FAC ¶¶ 19,

13   24, 29, 34, 39, 45, 50, 56.)  Thus, Sosa's reasoning is inapposite here – since the

14   statements in Garibaldi's security deposit accountings are not the source of the alleged

15   misrepresentations, unlike the demand letters in Sosa.  Accordingly, defendant's

16   argument that plaintiffs' mail fraud allegations are insufficient must be rejected.

17           **4. Plaintiffs' Allegations Satisfy the RICO "Continuity" Requirement.**

18       Defendant contends that plaintiffs' first amended complaint fails to state a claim

19   under RICO because plaintiffs' allegations fail to establish a "pattern" of racketeering

20   activity.  (Motion at 10.)  To prove a pattern of racketeering activity a plaintiff must show

21   that the racketeering predicates are related, and that they amount to or pose a threat of

22   continued criminal activity.  H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229,

23   239 (1989).  Conduct is related if it embraces acts that have "the same or similar

24   purposes, results, participants, victims, or methods of commission, or otherwise are

25   interrelated by distinguishing characteristics and are not isolated events." Id., (citation

26

27           [2]Specific, fraudulent intent in a mail fraud case may be shown by a statement
     made with reckless indifference to its truth or falsity.  United States v. Munoz, 233 F.3d
28   1117, 1136 (9th Cir. 2000).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

11

1    omitted).  Closed-ended continuity may be shown over a closed period by proving a

2    series of related predicate acts extending over a substantial amount of time (not a few

3    weeks or months).  Id. at 241-42.  Open-ended continuity is shown by "past conduct

4    that by its nature projects into the future with a threat of repetition."  Id. at 241.

5    Predicate acts that specifically threaten repetition or that become a "regular way of

6    doing business" satisfy the open-ended continuity requirement.  Id. at 243.

7            In this case, plaintiffs have alleged facts showing both closed and open-ended

8    continuity.  First, the acts of mail fraud alleged by plaintiffs meet the "related"

9    requirement for pattern.  Each act had the same purpose (obtaining money from

10   Rancho tenants), the same result (obtaining money from Rancho tenants), the same

11   participants (Garibaldi) and victims (Rancho tenants), and methods of commission (by

12   way of Garibaldi's misrepresentation made at the beginning of the tenancy, followed by

13   mailing the closing statement).  Next, the allegations meet the requirement for closed-

14   ended continuity because they took place over a lengthy period of time.  They meet the

15   requirement for open-ended continuity because they are part of defendant's regular

16   way of doing business.

17          Defendant contends that plaintiffs cannot establish closed-ended continuity

18   because the alleged mail fraud took place over the course of only a three-month period.

19   (Motion at 10.)  That view of the allegations of plaintiffs' complaint is overly narrow.

20   Construing the complaint in the light most favorable to plaintiffs, as the Court must, the

21   predicate acts of mail fraud have taken place over a much longer period that just three

22   months.  Indeed, although the mailings completing the act of mail fraud took place

23   within an approximate three-month period, the scheme alleged by plaintiffs (for which

24   the mailings were in furtherance) started as early as July 2002, and continued through

25   November 2005. Plaintiffs allege that Garibaldi made misrepresentations to Edith

26   Macias in October 2004 upon which she relied when she gave Garibaldi her security

27   deposit.  (FAC ¶ 17-19.)  That was the first step in the mail fraud.  The mailing that

28   completed the mail fraud took place in November 2005.  (FAC ¶ 71(b).)  Likewise, the

1   first step in the mail fraud with respect to Aura Mendieta took place in October 2002,

2   and the mailing completing that fraud occurred in November 2005.  (FAC ¶¶ 27-29,

3   71(e).)  The first step in the mail fraud with respect to Tiffany Huynh took place in July

4   2002, and the final mailing occurred in October 2005.  (FAC ¶¶ 22-24, 71(g).)  Thus, at

5   the very least, the predicate acts took place over a three-year period from July 2002 to

6   November 2005.  That is a substantial period of time sufficient for closed-end continuity.

7       As alleged in plaintiffs' complaint, however, the remaining plaintiffs Laboy,

8   Acosta, Toral, Salambue and Duran also were victims of the same scheme – the

9   misrepresentations at the time of the lease agreement, and the mailings in furtherance

10  of the scheme to complete the transaction.  Plaintiffs are informed and believe that all

11  of the other plaintiffs received statements from defendant in the mail within several

12  weeks of vacating their units, but do not have copies of those statements upon which to

13  specifically plead when those mailings occurred.  (FAC ¶ 71(i).)  With the evidence of

14  those mailings to plaintiffs, proof of the scheme to defraud likely will extend back to

15  December 2001 and forward to April 2006.  (FAC ¶¶ 54-58 [Marina Duran moved in in

16  December 2001, and out in December 2005; ¶¶ 37-41 [the Acostas moved in in April

17  February 2002, and out in April 2006].  Thus, the predicate acts may extend over an

18  almost five year period from December 2001 to April 2006.

19      Even if closed-ended continuity could not be established, plaintiffs have alleged

20  sufficient facts on which to find open-ended continuity.  While defendant is correct that

21  a "mere allegation" that activities are a regular way of doing business is not sufficient to

22  satisfy RICO's pattern requirement, (Motion at 11, citing Howard v. America Online,

23  Inc., 208 F.3d 741, 750-51 (9th Cir. 2000), plaintiffs have more that mere allegations

24  here.  In Howard, the plaintiff brought a RICO suit claiming that AOL had published

25  misleading advertisements regarding its new "flat fee" service when the company

26  changed its pricing policy.  The Ninth Circuit found no open-ended continuity because

27  there were no facts alleged that supported an inference that the misleading advertising

28  was a regular way of doing business.  Id. at 750.  The plaintiff had "present[ed] no facts

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

13

1    indicating that misleading advertising would continue into the future, particularly given

2    that the problems stemmed from a one-time change in pricing policy." Id.

3            In contrast, in this case, the facts alleged by plaintiffs give rise to an inference

4    that the alleged racketeering activity is Garibaldi's "regular way of doing business."

5    Here, the alleged pattern of conduct is the same no matter when the tenant moved in,

6    and no matter when they moved out.  The facts alleged by plaintiffs do not concern a

7    single transaction or business deal, or a single event that will draw to a natural close

8    itself.  See, e.g., Religious Technology Center v. Wollersheim, 971 F.2d 364 (9th Cir.

9    1992) (conduct would end when civil case over); Howard, 208 F.3d at 750-51 (conduct

10   was related to one-time pricing change).  Rather, this case is more like Allwaste, Inc. v.

11   Hecht, 65 F.3d 1523, 1529 (9th Cir. 1995), where the Ninth Circuit found open-ended

12   continuity based on four alleged demands for kickbacks.  That the activities threatened

13   to continue into the future and had become the defendants' way of doing business was

14   supported by allegations that the activities were made possible by the employment

15   status of the defendants, were directed at a variety of victims and were not connected

16   to the consummation of any particular transaction.  Id.  Similarly, here the allegations

17   show that Garibaldi's position as property manager has enabled him to commit the

18   alleged acts, they are directed at a variety of tenants and they are not connected to the

19   consummation of a particular transaction – in other words they have no natural ending

20   point.[3]  Denying defendant's motion to dismiss and allowing the case to go forward

21   based upon the predicate acts as alleged comports with Congress' intent that the

22   provisions of RICO are to be liberally construed to effectuate its remedial purposes.

23   United States v. Turkette, 452 U.S. 576, 101 S. Ct. 2524 (1981).  Accordingly,

24   defendant's motion to dismiss should be denied.

25   ───────────────

26          [3]See also Ticor Title Insur. Co. v. Florida, 937 F.2d 447, 450 (9th Cir. 1991)
     (three forged lien releases in 13-month period suggested that the practice was a regular
27   part of the defendants' business); Ikuno v. Yip, 912 F.2d 306, 309 (9th Cir. 1990) (the
     filing of two false annual reports carried with it the threat of continuity).  Plaintiffs have
28   alleged sufficient facts to establish a pattern of racketeering under RICO.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI,
INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

14

### *5.  Plaintiffs' Allegations Satisfy RICO's Proximate Cause Requirement.*

Defendant also argues that plaintiffs have failed to plead an actionable RICO claim because they do not allege that they relied on the mailings to their detriment, or that they were induced to part with any money as a result of the mailings.  (Motion at 11-12.)  Again, defendant misconstrues the mailing requirement when mail fraud is the alleged predicate act.  As defendant admits, plaintiffs have alleged that at the time they executed their leases, they reasonably relied on Garibaldi's representations that Garibaldi would return their security deposit.  (Motion at 10, n.4.)  Plaintiffs further allege that Garibaldi used the mails in furtherance of that scheme, and that plaintiffs suffered injury, including injury to their property, as a result of Garibaldi's RICO violation.  (FAC ¶¶ 70-72.)  Those allegations are sufficient to allege that Garibaldi's racketeering activities proximately caused plaintiffs' injuries.[4]

### B.  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Should be Denied.

Plaintiffs' first amended complaint states a claim under RICO.  Because plaintiffs' state law claims arise out of the same facts and occurrences, this Court may exercise supplemental jurisdiction over those state claims.  28 U.S.C. § 1367(a).

### VI.  CONCLUSION

Plaintiffs request the Court to deny defendant's motion to dismiss in its entirety.

Dated: November 9, 2007.          Respectfully submitted,

BRANCART & BRANCART


/s/_____
Elizabeth Brancart
Attorneys for Plaintiffs

---

[4]Indeed, the case cited by defendant, Poulos v. Caesar's World, Inc., 379 F>3d 654, 664 (9th Cir. 2004), does not state, as defendants imply, that the plaintiff must show that he or she detrimentally relied on statements communicated through the U.S. mails.  Rather, a plaintiff need only show a causal link between the misrepresentations and the injury.  Id. at 664-65.  Here, plaintiffs have made that necessary allegation showing that they were injured as a result of the scheme to defraud.  (FAC ¶¶ 70-72.)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI, INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

15

# **PROOF OF SERVICE**

I am over the age of 18 and am not a party to the within action.  My business address is 8205 Pescadero Road, Loma Mar, California  94021.

On November 9, 2007, I served a true and correct copy of the following document(s):

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY MARK GARIBALDI, INDIVIDUALLY AND dba THE GARIBALDI COMPANY**

upon the following person(s):

Ms. Sara Allman, Allman & Nielsen, 100 Larkspur Landing Circle, Suite 212 Larkspur, CA 94939; and

Mr. John S. Blackman, Farbstein & Blackman, 411 Borel Ave., Suite 425, San Mateo, CA  94402

|   |   |
|---|---|
|   | **BY HAND DELIVERY**:  By causing such document(s) to be delivered by hand to the above person(s) at the address(es) set forth above. |
|   | **BY MAIL**:  By placing a copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Loma Mar, California, addressed as set forth above. |
|   | **BY THIRD-PARTY COMMERCIAL CARRIER (OVERNIGHT DELIVERY)**:  By delivering a copy thereof to a third-party commercial carrier, addressed as set forth above, for delivery on the next business day. |
|   | **BY FACSIMILE**:  By transmitting the above document(s) to the facsimile number(s) of the addressee(s) designated above. |
| xx | **BY ELECTRONIC TRANSMISSION OF THE "NOTICE OF ELECTRONIC FILING:"** By electronically filing the document(s) (All counsel are "Filing Users") |

I certify that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 9, 2007, at Loma Mar, California.

/s/ Elizabeth Brancart
Elizabeth Brancart

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY DEFENDANT MARK GARIBALDI, INDIVIDUALLY AND dba THE GARIBALDI COMPANY - Case No. C 07-3437 JSW

16