IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDITH MACIAS, et al.,

    Plaintiffs,

v.

THOMAS J. TOMANEK, et al.,

    Defendants.

No. C 07-03437 JSW

**ORDER GRANTING GARIBALDI'S MOTION TO DISMISS AND GRANTING TOMANEK'S MOTION TO DISMISS**

Now before the Court are the motions to dismiss filed by Defendant Mark Garibaldi individually and doing business as The Garibaldi Company (collectively "Garibaldi") and filed by Defendant Thomas J. Tomanek ("Tomanek"). The Court finds that these matters are fully briefed and appropriate for disposition without oral argument and are hereby deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for January 11, 2008 is HEREBY VACATED. Having carefully considered the motions and the relevant legal authority, the Court hereby GRANTS Garibaldi's motion to dismiss and GRANTS Tomanek's motion to dismiss.

**BACKGROUND**

Plaintiffs are nine former tenants of the Rancho Del Sol and/or Rancho Luna apartments in Fremont, California. Thomas J. Tomanek is an owner of the properties and defendant Mark Garibaldi, doing business as the Garibaldi Company, is the property manager. Plaintiffs claim that charges were improperly imposed against their security deposits. In what is essentially a landlord-tenant dispute, Plaintiffs allege that Garibaldi violated the Racketeer Influenced and

1  Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, by "engaging in a scheme of
2  misrepresentation and other unlawful acts in connection with retaining tenants' security
3  deposits and demanding additional payments for alleged property damage upon move-out."
4  (Compl., ¶ 1.)  The rest of the claims and all claims against Tomanek are based in California
5  state law.

6  **A.     Legal Standards Applicable to Motions to Dismiss.**

7  A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a
8  claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss should
9  not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts
10 supporting his or her claim.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz
11 v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).  The complaint is construed in the light most
12 favorable to the non-moving party and all material allegations in the complaint are taken to be
13 true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  The court, however, is not
14 required to accept legal conclusions cast in the form of factual allegations if those conclusions
15 cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d
16 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

17 **B.     Plaintiffs Fail to State a Claim for RICO Violation.**

18 The essential elements of a civil RICO violation under 18 U.S.C. § 1962(c) are:
19 "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima,
20 S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *see also Miller v. Yokohama Tire Corp.*,
21 358 F.3d 616, 620 (9th Cir. 2004).  "'Racketeering activity' is defined in 18 U.S.C. §
22 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes,
23 including 18 U.S.C. §1341, which makes mail fraud a criminal offense." *Yokohama Tire*, 358
24 F.3d at 620 (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399 (9th
25 Cir. 1986)).  To allege a violation of mail fraud under § 1341, "it is necessary to show that (1)
26 the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States
27 mails or caused a use of the United States mails in furtherance of the scheme; and (3) the
28 defendants did so with the specific intent to deceive or defraud." *Id.* (citing *Schreiber*, 806 F.2d

1  at 1400). To be considered part of the fraud, the use of the mails need not be an essential
2  element of the scheme. *Schmuck v. United States*, 489 U.S. 705, 710 (1989). "It is sufficient
3  for the mailing to be 'incident to an essential part of the scheme' or 'a step in [the] plot.'" *Id*.
4  (citing *Badders v. United States*, 240 U.S. 391, 394 (1916)).

5  Although plaintiffs need not plead "racketeering injury," they must demonstrate that
6  their business or property was injured *by reason of* the alleged RICO violation. In other words,
7  plaintiffs must allege that their injury was proximately caused by a RICO violation. *Chaset v.*
8  *Fleer/Skybox Int'l*, 300 F.3d 1083, 1086 (9th Cir. 2002). In order to establish proximate cause,
9  plaintiffs must demonstrate that there exists a "direct relation between the injury asserted and
10 the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258,
11 266 (1992).

12 In this case, Plaintiffs allege that Garibaldi committed mail fraud by mailing closing
13 statements to Plaintiffs detailing the cleaning and repair work performed by the landlord, the
14 amounts paid for that work, and the net refund or balance due after applying the security
15 deposit. (Compl., ¶ 43.) Plaintiffs maintain that the fraudulent scheme involved both the
16 representation in the mailings as well as the representations, upon move-in, that there would not
17 deductions from the renters' security deposits based on ordinary wear and tear on the property.
18 Plaintiff contend that when they later vacated the apartments, they were charged for the
19 ordinary wear and tear. (*Id.*) Plaintiffs allege a scheme to defraud based on the
20 misrepresentations made to them to induce them to part with their security deposits, and that
21 Garibaldi used the United States mails in furtherance of that scheme by sending them the
22 security deposit closing statements through the mails. (*Id.*; Opp. Br. at 4.)

23 However, the "federal mail fraud statute does not purport to reach all frauds, but only
24 those limited instances in which the use of the mails is a part of the execution of the fraud,
25 leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323
26 U.S. 88, 95 (1944). In this matter, the alleged mailings constituting the execution of the fraud
27 occurred after Garibaldi had gained final possession of the tenants' security deposits.
28 According to well-settled Supreme Court precedent, if the mailings occur after the

3

1  consummation of the fraudulent scheme's objective, such mailings will not support a mail fraud
2  charge. *See, e.g., id.* at 94 (finding that after-the-fact mailings were not material to execution of
3  the fraud because the "scheme ... had reached fruition. The persons intended to receive the
4  money had received it irrevocably."); *Parr v. United States*, 363 U.S. 370, 393 (1960) ("Here,
5  as in *Kann*, '[t]he scheme in each case had reached fruition' when [those charged] received the
6  goods and services complained of."); *United States v. Maze*, 414 U.S. 395, 401 (1974) (noting
7  that "Respondent's scheme had reached fruition when he checked out of the motel").

8  There are two recognized exceptions to the general rule restricting liability for post-
9  consummation instances of mail fraud. The first, recognized in *United States v. Sampson*, holds
10 that where mailings are designed to "lull the victim" by falsely promising performance, they
11 may be incident to the scheme even if they occur after the defendant has already taken the
12 victim's property. 371 U.S. 75, 78 (1960) (district court erred in dismissing RICO claim in
13 which mailings were allegedly made "for the purpose of lulling said victims by representing
14 that their applications had been accepted and that the defendants would therefore perform for
15 said victims the valuable services which the defendants had falsely and fraudulently represented
16 that they would perform.") In this matter, the fact that Garibaldi sent out notices of the
17 deductions in the tenants' security deposits were more likely to alert Plaintiffs to the supposed
18 fraud, then to lull them into complacency. *See United States v. Manarite*, 44 F.3d 1407, 1413
19 (9th Cir. 1995) (reversing mail fraud convictions where after-the-fact mailings "were clearly not
20 part of any kind of lulling scheme. They would not assure the victim that all is well; rather,
21 they would have exposed the credit scam and increased the likelihood of the Manarites'
22 apprehension.").

23 The second recognized exception to after-the-fact mailings, is elucidated in the case
24 relied upon Plaintiffs here, *Schmuck v. United States*, 489 U.S. 705. In that case, the Court
25 found that after-the-fact mailings of the title to retail purchasers of used cars with tampered
26 odometers was an essential step in the fraudulent scheme because the success of the venture
27 depended upon the auto retail dealers' continued faith in the operation and their ability to resell
28 cars. The Court found "although the registration-form mailings may not have contributed

4

directly to the duping of either retail dealers or the customers, they were necessary to the passage of title, which in turn was essential to the perpetuation of Schmuck's scheme." *Id.* at 712.

In this matter, the alleged scheme of withholding unlawful amounts from the tenants' security deposits had reached fruition by the time Plaintiffs were alerted that Garibaldi was withholding funds from their deposits through the mailed notices. The notice sent by mail did not have the effect of lulling Plaintiffs, rather it drew attention to the alleged fraud. Further, the mailed notices did not contribute to the alleged duping scheme and were not essential to it, but rather were a required notice of the withholdings under California law.

In addition, the fact that the mailings were made pursuant to California law compels the conclusion that such mailings were not criminal under the federal mail fraud statute. *See Parr*, 360 U.S. at 391 (holding that the legally compelled mailings were not unlawful steps in perpetrating a fraud because "it cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law are criminal under the federal mail statute.")

Lastly, in order to establish a RICO injury, Plaintiffs must demonstrate that their business or property was injured by reason of the alleged RICO violation. Plaintiffs must allege that their injury was proximately caused by a RICO violation. *Fleer/Skybox*, 300 F.3d at 1086; *see also Holmes*, 503 U.S. at 266 (plaintiffs must demonstrate that there exists a "direct relation between the injury asserted and the injurious conduct alleged."). The mailings documenting the disposition of the security deposit funds is not the cause of Plaintiffs' alleged injuries. The predicate act purportedly giving rise to RICO jurisdiction is too attenuated to satisfy the requirement to plead proximate cause or sufficient RICO injury.

**C.      Complaint is Dismissed for Lack of Subject Matter Jurisdiction.**

Absent Plaintiffs' RICO claim, there is no independent basis for the exercise of federal jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and the complaint is dismissed in its entirety.

5

**D.    Tomanek's Motion to Dismiss is Granted.**

Because the Court has dismissed the RICO claim against Garibaldi and has dismissed the remaining state law claims, as Plaintiffs concede, the Court must dismiss the complaint as against Tomanek for lack of subject matter jurisdiction.

### CONCLUSION

Accordingly, Defendant Garibaldi's and Defendant Tomanek's motions to dismiss are GRANTED with prejudice. The Court notes that Plaintiffs are not without a potential remedy in state court.

**IT IS SO ORDERED.**

Dated: January 8, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE