Sara B. Allman, Esq., CSB #107932
Steven A. Nielsen, Esq., CSB #133864
■ ALLMAN & NIELSEN ■
A Professional Corporation
100 Larkspur Landing Circle, Suite 212
Larkspur, CA 94939
Telephone:  (415) 461-2700
Facsimile:  (415) 461-2726

Attorneys for Defendant
THOMAS J. TOMANEK

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDITH MACIAS, individually and on behalf of similarly situated individuals; HOTON DURAN; TIFFANY HUYNH; AURA MENDIETA: WILLIAM LABOY; MIGUEL ACOSTA; CRUZ ACOSTA; CUAUHTEMOC TORAL; and TERESA VILLEGAS, KAPIKA SALAMBUE and MARINA DURAN | Case No.: C07 3437 JSW |
| | **DECLARATION OF SARA B. ALLMAN IN SUPPORT OF MOTION TO BE DECLARED PREVAILING PARTY AND FOR AN AWARD OF ATTORNEY'S FEES AND COSTS** |
| Plaintiffs,<br>vs. | DATE:  March 14, 2008<br>TIME:  9:00 A.M.<br>COURTROOM:  2, 17th Floor<br>JUDGE:  Hon. Jeffrey S. White |
| THOMAS J. TOMANEK; and MARK GARIBALDI, individually and doing business as THE GARIBALDI COMPANY, | Date Action Filed:  June 29, 2007 |
| Defendants. | |

-1-

ALLMAN & NIELSEN, P.C.
100 Larkspur Landing Circle
Suite 212
Larkspur, CA 91939
Telephone: (115) 461-2700 Facsimile: (415) 461-2736

1    I, Sara B. Allman, declare as follows:

2    1.    I am an attorney at law, duly licensed to practice before all the courts of

3    this state, and am president of Allman & Nielsen, A Professional Corporation, attorneys

4    of record for defendant THOMAS J. TOMANEK (hereinafter "defendant") herein.  The

5    following facts are within my personal knowledge and, if sworn to testify, I would testify

6    competently thereto.

7    2.    Attached as Exhibit "A" is a true and correct copy of the lease agreement

8    of plaintiffs Hoton Duran and Edith Macias. I am informed and believe that Exhibit "A"

9    is the same in form and substance as the lease agreement entered into by each of the

10   plaintiffs in this action.

11   3.    Attached as Exhibit "B" is a true and correct copy of the court's order that

12   granted defendants' motions to dismiss.

13   4.    Attached as Exhibit "C" is a true and correct copy of the court's judgment

14   pursuant to the court's order granting defendants' motions to dismiss.

15   5.    I am a civil litigation attorney with over 24 years of experience in state

16   and federal court and am AV-rated by Martindale Hubbell.

17   6.    The attorney's fees incurred to date by Allman & Nielsen, P.C. in

18   prevailing on behalf of defendant THOMAS J. TOMANEK in the action total $20,064.

19   Costs incurred in prevailing in the action total $187.52.  These charges are reasonable

20   and were necessarily incurred in the defense of moving defendant relative to defense of

21   the action.

22   7.    Attached as Exhibit "D" is a true and correct itemization of the time

23   actually expended by Allman & Nielsen, P.C. in defending the action up to the time of

24   submission of the within motion.  I have redacted specific descriptions that are

25

-2-

ALLMAN & NIELSEN, P.C.
100 Larkspur Landing Circle
Suite 212
Larkspur, CA 91939
Telephone: (415) 464-2700 Facsimile: (415) 461-2726

**DECLARATION OF SARA B. ALLMAN IN SUPPORT OF
MOTION TO BE DECLARED PREVAILING PARTY AND
FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

1  privileged. I will make the un-redacted itemizations available for the court's in camera

2  inspection pursuant to Civil L.R. 54-6. Exhibit "D" reflects the time spent and hourly

3  compensation at our usual and customary hourly billing rate herein of $165 for matters

4  of this type. Our firm bills in increments of .10 of an hour, with a minimum .10 charge.

5  The itemization sets forth the nature of the services rendered in the matter by me. The

6  time records are maintained by the firm's PC Law computer system after manual entry

7  on the date incurred.

8      8.    On January 10, 2008, I met and conferred telephonically with plaintiffs'

9  counsel, Chris Brancart and Elizabeth Brancart, as well as John S. Blackman, counsel for

10 co-defendant Garibaldi, for the purpose of attempting to resolve any disputes with

11 respect to this motion. I also followed up by email correspondence to the Brancarts on

12 January 14, 2008, following my review and analysis of the legal authority cited by

13 plaintiffs' counsel. No resolution was reached.

14      I declare under penalty of perjury under the laws of the State of California that the

15 foregoing is true and correct and that this declaration was executed on this 22nd day of

16 January, 2008, in Larkspur, California.

SARA B. ALLMAN

17

18

19

20

21

22

23

24

25

-3-

ALLMAN & NELSEN, P.C.
160 Larkspur Landing Circle
Suite 212
Larkspur, CA 94939
Telephone: (415) 461-2700 Facsimile: (415) 461-2726

**DECLARATION OF SARA B. ALLMAN IN SUPPORT OF
MOTION TO BE DECLARED PREVAILING PARTY AND
FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

<u>PROOF OF SERVICE</u>

  I am a citizen of the United States and employed in Marin County, California. I am over the age of eighteen years and not a party to the within action. My business address is 100 Larkspur Landing Circle, Suite 212, Larkspur, California 94939-1743.

  On this date I served the foregoing documents described as:

**DECLARATION OF SARA B. ALLMAN IN SUPPORT OF MOTION TO BE DECLARED PREVAILING PARTY AND FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

on the interested parties in the action by placing [] the original [X] a true copy thereof, enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Christopher Brancart<br>Elizabeth Brancart<br>BRANCART & BRANCART<br>PO Box 686<br>Pescadero, CA  94060 | Attorney for Plaintiffs EDITH MACIAS, individually and on behalf of similarly situated individuals; HOTON DURAN; TIFFANY HUYNH; AURA MENDIETA; WILLIAM LABOY; MIGUEL ACOSTA; CRUZ ACOSTA; CUAUHTEMOC TORAL; and TERESA VILLEGAS |
| John S. Blackman<br>Farbstein & Blackman<br>411 Borel Ave #425<br>San Mateo, CA 94402-3518 | Attorneys for Defendant MARK GARIBALDI, individually and doing business as THE GARIBALDI COMPANY |

[X] **BY MAIL:**  I deposited such envelope with postage thereon fully prepaid in the United States Postal Service mailbox at Larkspur, California.

[ ] **BY PERSONAL SERVICE:**  I delivered such envelope by hand to the addressee.

[ ] **BY FACSIMILE:**  I sent such document via facsimile to the facsimile machine of the addressee.

[ ] **BY EXPRESS MAIL:**  I deposited such envelope in a mailbox regularly maintained by the United States Postal Service for receipt of Express Mail postage paid to be delivered by Express Mail for overnight courier service to the addressee.

[ ] **BY OVERNIGHT DELIVERY:**  I deposited the envelope, in an envelope designated by the express service carrier, with delivery fees provided for, in a box regularly maintained by the express service carrier for overnight delivery.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

-4-

ALLMAN & NIELSEN, P.C.
100 Larkspur Landing Circle
Suite 212
Larkspur, CA  94939
Telephone: (415) 461-2700 Facsimile: (415) 461-2726

DECLARATION OF SARA B. ALLMAN IN SUPPORT OF
MOTION TO BE DECLARED PREVAILING PARTY AND
FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

1   Executed on January 22, 2008, at Larkspur, California.

2

3   _____
    NOLI VILLA

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-5-

ALLMAN & NIELSEN, P.C.
100 Larkspur Landing Circle
Suite 212
Larkspur, CA 94939
Telephone: (415) 461-2700 Facsimile: (415) 461-2726

**DECLARATION OF SARA B. ALLMAN IN SUPPORT OF
MOTION TO BE DECLARED PREVAILING PARTY AND
FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

Exhibit "A"

**Rental Agreement**

the
**garibaldi**
*company*
property management services

1. **EFFECTIVE DATE AND PARTIES:** This agreement was made and entered into this ___21st___ day of ___October___ 20 ___04___

between    The Garibaldi Company    agent for *TOMANEK + TOMANEK PARTNERS DBA RANCHO LUNA* (hereinafter called "owner")

and ___Hiten Durán + Edith Macias___ (hereinafter jointly called "tenant").

Other Occupants ___None___

2. **PREMISES:** Owner agrees to lease to tenant the premises described as apartment # ___246___ at ___3939 Monroe Avenue___

in ___Fremont___ CA ___94536___ , CA.

3. **OCCUPANCY:** The premises shall be used only for residential purposes and not more than ___2___ persons shall reside there at any time.

4. **TERM AND RENT:** The premises are to be occupied by tenant(s) for the term commencing on ___Oct 21___ 20 ___04___ , through ___Oct 31___ , 20 ___05___ ,
(fixed term lease) at a monthly rental rate of $ ___1,845.00___ or lease term rate of $ ___10,312.00___ , payable to owner at the apartment manager's office (or some other place as owner shall from time to time designate in writing), without deduction or offset of any kind, in advance and without demand on or before the first day of each calendar month, Rent for the first full calendar month shall be paid at the time of execution of this lease by tenant.

A. If the term of this lease does not begin on the first of a calendar month or end on the last day of a calendar month, the rent for such month shall be pro-rated on the basis of a thirty-day month. The pro-rated rental from the date of move-in to the first day of the following month is $ ___467.00___ . Tenant's right to possession is expressly contingent upon the prompt payment of rent, and the use of the premises by tenant is obtained only by the condition that rent is paid on time. Owner may require that all rent and other sums due be paid in one monthly check rather than multiple checks.

B. Rent is due and payable the first calendar day of each month. Any payments made after the first are considered late. In the event that the tenant does not provide the rental payment to owner by the fifth of each month, as required, tenant agrees to pay a late charge of $25.00 on the sixth and an additional $5.00 for each subsequent day of monies outstanding. The maximum penalty not to exceed 8% of the monthly rent. The late charge will be applied when any monies are outstanding at the close of business on the 5th calendar day of the month. All monies paid after the close of business on the 5th must be paid with either cash, money order or a cashier's check. Tenant understands and agrees that the payment of said late charges in no way constitutes a waiver by owner to any rights that owner has to terminate the tenancy according to law.

C. Owner agrees to accept, as payment of the rent, personal check, cash, money order or cashier's check. Should tenant present a check to owner which does not clear the bank for any reason, tenant must immediately replace the check with either cash, money order, or a cashiers check. Such payment shall include the $25.00 late charge and returned check bank charges of $25.00 per check. Tenant must pay any additional or further rent or other charges for the remainder of the residency, by either cash, money order, or cashier's check. No exceptions will be made unless tenant provides the owner with a letter from tenant's bank stating that there was an error on the bank's part which caused the tenant's check to be returned. This error must be verified by the owner. This letter must be an original copy written on banking institution letterhead and signed by an officer of the bank or Savings and Loan. Only upon verification of said letter will the tenant be authorized to pay rent by other than cash, money order or cashier's check.

This rental agreement can be amended modified or supplemented only by a writing signed by both parties. Any purported oral amendment, modification or supplement shall be void.

5. **DEPOSITS:** Tenant agrees to the payment of the following deposits:
A. **Security Deposit:** In addition to the said rental payments, the lessee agrees to pay the sum of $ ___1700.00___ herewith, as a security deposit. The said deposit is to be held by the lessor as security for faithful performance after the terms of this agreement. Further the said deposit, or written statement indicating the disposition is to be mailed within 3 weeks of vacating the premises, less any damages to the premises, fixtures or furnishing, reasonable wear and tear excepted; and less any other amount due under the terms of this agreement.

B. **Pets:** of any kind are prohibited in the common area. Pets of any kind are prohibited on the premises or in the apartment house without prior written consent of the owner which may be revoked at any time, with or without cause. If tenant plans to acquire or bring a new pet on the premises, it shall be required immediately to the owner who can increase the existing deposit as a condition for owner's permission under this section. Permission is hereby given to resident to maintain the following pet on the premises:

Pet's name ___N/A___ , Breed ___N/A___ , Color ___N/A___ , Weight ___N/A___

Such permission is in consideration of a pet security deposit in the amount of $ ___N/A___ , subject to deductions for cleaning and repair of pet damages and less any other amount due under the terms of this agreement.

6. **RENTAL INCENTIVE:** In the event tenant has received free rent or concession or other compensation as an inducement to enter into this agreement for a certain lease term, tenant agrees to pay back the incentive prior to tenant vacating the premises if tenant terminates his lease or defaults before the end of the lease term. The value of this incentive is $ ___1 Month Free Rent___

7. **NOTICE TO VACATE:** Owner and tenant agree that the leasehold will terminate on the above stated date only upon written notice from either party thirty (30) days prior to said termination date. If tenant fails to serve such notice on lessor, the parties agree to continue the tenancy month to month, subject to month to month additional rent of $25.00, subject to the right of the parties to negotiate terms agreeable to both. Lessor agrees to serve notice on tenant of any proposed revision in rental payments thirty (30) days prior to the effective date of such change. If any personal property belonging to the resident is left in the apartment or if the keys are not returned, the former tenant is deemed in control of the apartment and therefore subject to rent liability until the keys are returned and the personal property removed. State law provides that a resident holding over after notice date given is liable for triple rent for each day he holds the apartment beyond the date given.

8. **GUESTS:** The written consent of the owner is required prior to the occupancy of the premises by any guests of tenants for continuous periods greater than 72 hours. If approved by owner, such guests must obey the apartment house rules and policies of owner. Failure of guest to abide by the rules and policies of owner will result in termination of this rental agreement.

9. **APARTMENT HOUSE RULES AND REGULATIONS:** Tenant agrees to abide by all written rules now in effect and as such rules may be amended. Such rules are incorporated herein as part of the terms, covenants and conditions of this agreement. In the event of revision of such rules, Tenant will be notified by the posting of such revised rules in the office of the manager of the apartment. These rules, adopted by owner, are for your protection as well as that of your fellow residents. Owner reserves the right to take whatever steps may be necessary to enforce such rules and regulations. Any violation of the following rules will be grounds for termination of the rental agreement without notice.

A. **Noise.** Sound equipment should be operated in a way that does not disturb others, this equipment is to include but is not limited to stereos, televisions and motor vehicles. Vocal or instrumental music, typing, pounding or other noises are prohibited if the sound penetrates into other apartments. Loud noise, boisterous play, running on stairs and slamming of doors are prohibited. These rules are in effect at all hours, however, the hours of 9:00 p.m. to 9:00 a.m. are considered sleeping hours when any noise may be particularly disturbing to others.

B. **Waterbeds.** Waterbeds are not allowed in the apartment unless written approval has been given by the owner and the tenant has secured insurance coverage to protect against risk of loss or damage to the premises as the result of use of the waterbed on the premises. Tenant agrees to provide owner with a copy of the required insurance coverage prior to the installation of any waterbed.

INSURANCE REQUIRED ___N/A___ Yes ___N/A___ No    INITIALS ___N/A___    PROOF PROVIDED ___N/A___    DATE ___N/A___

C. **Housekeeping.** Tenant is responsible for maintaining cleanliness on the patio area as well as entryway. House cleaning that might disturb others should be done during normal waking hours 9:00 a.m. to 9:00 p.m.; house cleaning may include but is not limited to vacuuming and operating other major appliances such as dishwasher, washer or dryer. Tenant may not store garbage or other items not intended for exterior exposure on patio or entryway.

D. **Plumbing.** ALL PLUMBING STOPPAGE IS THE RESPONSIBILITY OF THE TENANT. Do not put grease drippings in the drains. Place grease drippings in a container and deposit in trash bin. The "insinkerator" in the kitchen sink is not a "garbage" disposal, rather it is an aid to the disposition of small food particles. Do not put fiberous or solid items in the insinkerator. Do not put unsuitable items in toilet. Unsuitable items include but are not limited to; sanitary napkins, matches, cotton swabs, or course paper.

E. **Damage.** Tenant will be required to pay for all damage to the apartment or apartment complex caused by the tenant or their guests negligence or willful conduct or misconduct.

F. **Vehicles.** Repairs of any kind to vehicles of any kind are not permitted on the premises. Washing of any vehicle is not permitted on the premises except in areas designated by owner. Vehicles leaking or dripping oil of any kind are prohibited. Tenant is responsible for the clean up of any area damaged by oil from their or their guests vehicles. Storage of vehicles is prohibited on the premises and will be subject to tow away at owners expense. Storage to include but not limited to vehicles not currently licensed, vehicles not in use for a period not to exceed fourteen (14) days, or vehicles not maintained in operable condition.

G. **Vehicle Parking.** In the event that tenant or any of tenant's guests park a vehicle in a reserved covered carport space other than that carport assigned to tenant, or park in an undesignated parking space the improperly parked vehicles will be towed, WITHOUT NOTIFICATION, AT THE OWNER'S EXPENSE. It is the tenant's responsibility to monitor and control tenant's parking spaces for their purposes. It is the tenant's responsibility to notify their guests of the parking policy.

H. **Security.** Tenants and guests are responsible for their own safety. Every tenant is expected to assist in crime prevention. The owner makes no warranty as to the provision for security of tenants or guests.

I. **Lock-out Policy.** Tenants are responsible for maintaining access to their apartment. In the event the tenant loses, misplaces or otherwise does not have the keys to their apartment the owner may allow entry into the apartment. Tenant must provide owner with picture identification or must otherwise satisfy owner of their identity. During normal business hours tenant may borrow the key from the office. Failure to return the key will result in a ___25.00___ fee. After normal business hours tenant must contact office through the afterhours answering

service or courtesy officer, if available. The fee for after hours entry in _____ apartment, through previously issued keys, ____ or. If keys are not ava____ o the owner, the tenant must obtain a locksmith. Tenant will be responsible for the payment of the locksmith. All fees, including those paid to ___ksmith or owner representative must be paid at the time entry is granted. Owner is not responsible for tenants entry into the apartment.

**10. AMENITY AREA GUIDELINES:** Apartment amenity areas may include but are not limited to: Pool(s), Spa(s), Fitness Center, Racquetball Court(s), Tennis Court(s), Club House, Sauna(s). The following rules and regulations are designated to maximize your enjoyment of the amenities provided on the premises. Tenants are cautioned regarding safety in the use of the amenities and need to be aware of the hazards which may result from negligent behavior. The owners, management and agents make no warranty regarding safety in the use of the amenities by tenants. Amenity hours are ___9___ a.m. to ___6___ p.m. This facility is not rented out for private functions. No food, drink (including but not limited to alcoholic beverages) or smoking are allowed in any indoor amenity area.

Failure to adhere strictly to the rules and regulations is acknowledged as grounds for suspension of privileges and possible termination of the tenancy after service of a 3-day Notice to Quit.

Tenants and guests swim and otherwise use the amenity area at their own risk.
1. Beverages are permitted only around the pool area, and then only in plastic containers.
2. No alcohol or food of any kind.
3. No glass of any kind.
4. Guests are limited to two per apartment and must be accompanied by tenant at all times.
5. No residents or guests under 18 years of age allowed in the indoor athletic facilities.
6. No pets allowed.
7. No running, pushing, shoving, and/or roughhousing.
8. No music equipment allowed unless personal earphones are used.
9. The pool is open for swimming between the hours of ___9___ a.m. to ___6___ p.m.
10. Swimmers must wear proper swimming attire. Cut-offs, t-shirts, or undergarments are examples of improper swimming attire.
11. All swimmers 14 years of age or under must be accompanied by the parental resident. Between the hours of ___9___ a.m. to ___6___ p.m.

**11. CONDITION OF APARTMENT, SURRENDER, DAMAGES:** Tenant has had the opportunity to inspect the apartment and acknowledges that the apartment on the date of execution of this agreement is in good and habitable condition; subject to Exhibit A. As part of the consideration for rental as stated above, tenant will keep and maintain the apartment, appurtenances, and personal property belonging to lessor, in good, safe, sanitary and operating condition during the terms of this agreement. Tenant shall be responsible for payment for damages or repairs necessitated by the unwillful or negligent conduct of tenant or tenant's guests. Payment for repairs due to any damage or injury caused to the apartment by tenant or any person who may be in the apartment shall be made by tenant. Tenant shall, at the termination of this agreement, without further notice to quit, surrender to owner the apartment, with all appurtenances and personal property belonging to owner in as good condition as when inspected on the date of execution of this agreement, with the reasonable wear and tear and damage by the elements excepted. Attached hereto as Exhibit A is the move-in Inspection Report, a copy of which is hereby acknowledged by tenant.

Tenant shall return completed copy by ___72 - hours___, and in exchange will receive the mail box key.

**12. ALTERATIONS:** Tenant shall make no alterations or undertake redecorating without the prior written consent of owner. No screws, nails, or other materials shall be imbedded or attached to the walls of the premises, except that pictures may be hung with picture hooks. No nails will be put in any wallpaper. Owner shall make or cause to be made and shall pay for: (1) all structural and mechanical repairs provided the need for such repairs are not caused by or contributed to by the fault of tenant, his guests, friends, agents, or employees; and (2) all repairs required by ordinary wear and tear. Tenant shall be responsible for all abnormal wear and tear including but not limited to stains to carpeting, nicks or tears to the linoleum, or marks to the paint during the course of tenant's occupancy and control.

**13. ASSIGNMENT/SUBLETTING:** Tenant agrees not to transfer or assign any interest in this agreement or in the premises, nor to sublet the apartment, or any part thereof, without the written consent of owner. No occupant other than those listed above shall reside in the apartment. Any occupant residing in the apartment in breach of this agreement shall have no right in or to the apartment and the tenancy may be terminated by owner without notice to any such occupant.

**14. UTILITIES:** Tenant agrees to pay for all utilities including any deposits required except water, sewer and garbage and to hold owner harmless therefrom. Owner shall have no responsibility for the interruption of utility services furnished by third-parties.

**15. LAWS:** The law of the state wherein the apartments are located shall govern the interpretation, validity and enforcement of this agreement. If any provision of this agreement shall be declared invalid or enforceable by a court of competent jurisdiction, the validity and enforceability of the remaining provisions of this agreement shall be affected thereby.

**16. INSPECTION:** Owner or its agent or agents shall be allowed to enter the apartment as provided by state law. And upon 24 hours written notice, the owner may enter to inspect the condition of the premises and/or appliances therein.

**17. TERMINATION:** This tenancy may be terminated by owner or tenant as provided by state law. Resident must give 30 days written notice of intent to vacate. Owner or its agents shall have the right to enter to take possession of the apartment as provided by state law, tenant shall be liable for payment of the full rental for the tenancy.

**18. BARBECUES:** Tenants are discouraged from the use of outdoor cooking grills on the premises. Tenant acknowledges and assumes liability for damages or loss resulting from such use. Any use of a grill larger than 288 square inches is strictly forbidden. Tenant must dispose of ashes properly.

**19. LIABILITY:** The owner is not responsible for damage to any personal property on the premises. Property on the premises shall be at the risk of the tenant, occupant or other owner of same and owner shall in no event be liable for loss to damage of such property, unless caused by the negligence of the owner. Tenant shall be liable for any claims of loss or damage to property, and injury or death to persons caused by negligence of tenant, his invitees or uninvitees occurring on the rented premises. Tenant assumes all responsibility for any and all personal property of tenant or third persons under tenant's control, place stored or located on the premises or elsewhere in or around the premises. Tenant is responsible for insurance coverage for such personal property in the event that such coverage is desired by tenant.

**20. MORTGAGE:** This agreement shall be subject and subordinate at all times to the lien of existing mortgages, deeds of trust, and financing statements upon leased property, and of mortgages, deeds of trust and financing statements which hereafter may be made a lien on the leased property, and to any renewal, modification, consolidation, replacement and extension of any such existing or future mortgages, deeds of trust and financing statements. Although no instrument or act on the part of the tenant shall be necessary to effectuate such subordination, tenant will, nevertheless, execute and deliver such further instruments subordinating this agreement to the lien of any such mortgages, deeds of trust, or financing statements as may be desired by the mortgagee. Tenant hereby appoints owner his attorney in fact, irrevocably, to execute and deliver any such instrument for tenant.

**21. CONDEMNATION:** If the whole of the property on which the premises are located, or such portion thereof as will make the property and/or the premises unsuitable for the purposes herein leased, is sold under threat of condemnation or is condemned for any public use or purpose by any legally constituted authority, then in either of such events this agreement shall cease and terminate from time when possession is taken by such public authority and rental shall be accounted for between owner and tenant at the date of the surrender of possession. Tenant shall have no claim against owner or the condemning authority for the unexpired term of this agreement.

**22. GENERAL PROVISIONS:** All terms, covenants and conditions herein are binding upon inure to the benefit of the heirs, executors and assigns of owner and tenant. This agreement constitutes the entire agreement between the parties and recites the entire consideration of the parties, and no representations or oral agreement not described in writing and no oral evidence may be offered to support such claims have been made by either party or their agents. Failure by owner to enforce the provisions herein in regard to any breach of any terms, covenants or conditions of this agreement shall not constitute a waiver of the future right to enforce such provision.

**23. ATTORNEY'S FEES AND COSTS:** Tenant acknowledges that if any legal action or proceeding to enforce the terms of this agreement is necessary, the prevailing party in such action is entitled to recovery of a reasonable attorney fee and costs of such action in addition to all other amounts owed, to the extent authorized by state law.

**24. RENTAL APPLICATION:** Attached hereto as Exhibit B is a rental application executed by tenants under penalty of perjury. In the event that any information upon tenant's rental application is incorrect or unverifiable such incorrect information will constitute a material and immediate breach of this rental agreement. The accuracy of such information is a condition precedent to tenant's entitlement to the benefits of this agreement, and owner may evict tenant after service of a 3 day notice to quit. It is the responsibility of the tenant to update owner regarding any changes of the information on the application, especially employment information.

**NOTICE TO TENANT:** Do not sign this agreement or any attached hereto if there are any blank spaces or incomplete sentences. By execution of this rental agreement tenant acknowledges receipt of a completely filled in rental agreement and attachments as set forth in this rental agreement.

Subject to the above-stated terms, owner hereby acknowledges receipt of the above-stated amount, and in consideration thereof, rents to the above-named tenant (whether one or more) and tenant hereby takes from owner, the apartment described above to be used by tenant as a lawful resident upon the terms hereinabove set forth, each of which are covenants as well as conditions.

IN WITNESS WHEREOF the parties hereto have executed this agreement as of the date and year first written above at _39139 Monroe Avenue Fremont CA 94536_

OWNER'S AGENT:                                              TENANT OR OCCUPANT:

Exhibit "B"

**United States District Court**
For the Northern District of California

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7
8              FOR THE NORTHERN DISTRICT OF CALIFORNIA
9    EDITH MACIAS, et al.,
10            Plaintiffs,                          No. C 07-03437 JSW
11    v.
12    THOMAS J. TOMANEK, et al.,                   **ORDER GRANTING**
                                                   **GARIBALDI'S MOTION TO**
13            Defendants.                          **DISMISS AND GRANTING**
                                                   **TOMANEK'S MOTION TO**
14    _____/          **DISMISS**
15

16          Now before the Court are the motions to dismiss filed by Defendant Mark Garibaldi

17    individually and doing business as The Garibaldi Company (collectively "Garibaldi") and filed

18    by Defendant Thomas J. Tomanek ("Tomanek"). The Court finds that these matters are fully

19    briefed and appropriate for disposition without oral argument and are hereby deemed submitted.

20    *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for January 11, 2008 is HEREBY

21    VACATED. Having carefully considered the motions and the relevant legal authority, the

22    Court hereby GRANTS Garibaldi's motion to dismiss and GRANTS Tomanek's motion to

23    dismiss.

24                                    **BACKGROUND**

25          Plaintiffs are nine former tenants of the Rancho Del Sol and/or Rancho Luna apartments

26    in Fremont, California. Thomas J. Tomanek is an owner of the properties and defendant Mark

27    Garibaldi, doing business as the Garibaldi Company, is the property manager. Plaintiffs claim

28    that charges were improperly imposed against their security deposits. In what is essentially a

      landlord-tenant dispute, Plaintiffs allege that Garibaldi violated the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, by "engaging in a scheme of

misrepresentation and other unlawful acts in connection with retaining tenants' security

deposits and demanding additional payments for alleged property damage upon move-out."

(Compl., ¶ 1.)  The rest of the claims and all claims against Tomanek are based in California

state law.

### A.    Legal Standards Applicable to Motions to Dismiss.

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a

claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss should

not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts

supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz

v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).  The complaint is construed in the light most

favorable to the non-moving party and all material allegations in the complaint are taken to be

true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  The court, however, is not

required to accept legal conclusions cast in the form of factual allegations if those conclusions

cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d

752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.    Plaintiffs Fail to State a Claim for RICO Violation.

The essential elements of a civil RICO violation under 18 U.S.C. § 1962(c) are:

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima,

S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *see also Miller v. Yokohama Tire Corp.*,

358 F.3d 616, 620 (9th Cir. 2004).  "'Racketeering activity' is defined in 18 U.S.C. §

1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes,

including 18 U.S.C. §1341, which makes mail fraud a criminal offense." *Yokohama Tire*, 358

F.3d at 620 (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th

Cir. 1986)).  To allege a violation of mail fraud under § 1341, "it is necessary to show that (1)

the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States

mails or caused a use of the United States mails in furtherance of the scheme; and (3) the

defendants did so with the specific intent to deceive or defraud." *Id.* (citing *Schreiber*, 806 F.2d

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

1    at 1400). To be considered part of the fraud, the use of the mails need not be an essential

2    element of the scheme. *Schmuck v. United States*, 489 U.S. 705, 710 (1989). "It is sufficient

3    for the mailing to be 'incident to an essential part of the scheme' or 'a step in [the] plot.'" *Id.*

4    (citing *Badders v. United States*, 240 U.S. 391, 394 (1916)).

5         Although plaintiffs need not plead "racketeering injury," they must demonstrate that

6    their business or property was injured *by reason of* the alleged RICO violation. In other words,

7    plaintiffs must allege that their injury was proximately caused by a RICO violation. *Chaset v.*

8    *Fleer/Skybox Int'l*, 300 F.3d 1083, 1086 (9th Cir. 2002). In order to establish proximate cause,

9    plaintiffs must demonstrate that there exists a "direct relation between the injury asserted and

10   the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258,

11   266 (1992).

12        In this case, Plaintiffs allege that Garibaldi committed mail fraud by mailing closing

13   statements to Plaintiffs detailing the cleaning and repair work performed by the landlord, the

14   amounts paid for that work, and the net refund or balance due after applying the security

15   deposit. (Compl., ¶ 43.) Plaintiffs maintain that the fraudulent scheme involved both the

16   representation in the mailings as well as the representations, upon move-in, that there would not

17   deductions from the renters' security deposits based on ordinary wear and tear on the property.

18   Plaintiff contend that when they later vacated the apartments, they were charged for the

19   ordinary wear and tear. (*Id.*) Plaintiffs allege a scheme to defraud based on the

20   misrepresentations made to them to induce them to part with their security deposits, and that

21   Garibaldi used the United States mails in furtherance of that scheme by sending them the

22   security deposit closing statements through the mails. (*Id.*; Opp. Br. at 4.)

23        However, the "federal mail fraud statute does not purport to reach all frauds, but only

24   those limited instances in which the use of the mails is a part of the execution of the fraud,

25   leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323

26   U.S. 88, 95 (1944). In this matter, the alleged mailings constituting the execution of the fraud

27   occurred after Garibaldi had gained final possession of the tenants' security deposits.

28   According to well-settled Supreme Court precedent, if the mailings occur after the

3

1   consummation of the fraudulent scheme's objective, such mailings will not support a mail fraud

2   charge. *See, e.g., id.* at 94 (finding that after-the-fact mailings were not material to execution of

3   the fraud because the "scheme ... had reached fruition. The persons intended to receive the

4   money had received it irrevocably."); *Parr v. United States*, 363 U.S. 370, 393 (1960) ("Here,

5   as in *Kann*, '[t]he scheme in each case had reached fruition' when [those charged] received the

6   goods and services complained of."); *United States v. Maze*, 414 U.S. 395, 401 (1974) (noting

7   that "Respondent's scheme had reached fruition when he checked out of the motel").

8        There are two recognized exceptions to the general rule restricting liability for post-

9   consummation instances of mail fraud. The first, recognized in *United States v. Sampson*, holds

10   that where mailings are designed to "lull the victim" by falsely promising performance, they

11   may be incident to the scheme even if they occur after the defendant has already taken the

12   victim's property. 371 U.S. 75, 78 (1960) (district court erred in dismissing RICO claim in

13   which mailings were allegedly made "for the purpose of lulling said victims by representing

14   that their applications had been accepted and that the defendants would therefore perform for

15   said victims the valuable services which the defendants had falsely and fraudulently represented

16   that they would perform.") In this matter, the fact that Garibaldi sent out notices of the

17   deductions in the tenants' security deposits were more likely to alert Plaintiffs to the supposed

18   fraud, then to lull them into complacency. *See United States v. Manarite*, 44 F.3d 1407, 1413

19   (9th Cir. 1995) (reversing mail fraud convictions where after-the-fact mailings "were clearly not

20   part of any kind of lulling scheme. They would not assure the victim that all is well; rather,

21   they would have exposed the credit scam and increased the likelihood of the Manarites'

22   apprehension.").

23        The second recognized exception to after-the-fact mailings, is elucidated in the case

24   relied upon Plaintiffs here, *Schmuck v. United States*, 489 U.S. 705. In that case, the Court

25   found that after-the-fact mailings of the title to retail purchasers of used cars with tampered

26   odometers was an essential step in the fraudulent scheme because the success of the venture

27   depended upon the auto retail dealers' continued faith in the operation and their ability to resell

28   cars. The Court found "although the registration-form mailings may not have contributed

United States District Court
For the Northern District of California

1   directly to the duping of either retail dealers or the customers, they were necessary to the

2   passage of title, which in turn was essential to the perpetuation of Schmuck's scheme." *Id.* at

3   712.

4          In this matter, the alleged scheme of withholding unlawful amounts from the tenants'

5   security deposits had reached fruition by the time Plaintiffs were alerted that Garibaldi was

6   withholding funds from their deposits through the mailed notices.  The notice sent by mail did

7   not have the effect of lulling Plaintiffs, rather it drew attention to the alleged fraud.  Further, the

8   mailed notices did not contribute to the alleged duping scheme and were not essential to it, but

9   rather were a required notice of the withholdings under California law.

10          In addition, the fact that the mailings were made pursuant to California law compels the

11   conclusion that such mailings were not criminal under the federal mail fraud statute.  *See Parr*,

12   360 U.S. at 391 (holding that the legally compelled mailings were not unlawful steps in

13   perpetrating a fraud because "it cannot be said that mailings made or caused to be made under

14   the imperative command of duty imposed by state law are criminal under the federal mail

15   statute.")

16          Lastly, in order to establish a RICO injury, Plaintiffs must demonstrate that their

17   business or property was injured by reason of the alleged RICO violation.  Plaintiffs must allege

18   that their injury was proximately caused by a RICO violation.  *Fleer/Skybox*, 300 F.3d at 1086;

19   *see also Holmes*, 503 U.S. at 266 (plaintiffs must demonstrate that there exists a "direct relation

20   between the injury asserted and the injurious conduct alleged.").  The mailings documenting

21   the disposition of the security deposit funds is not the cause of Plaintiffs' alleged injuries.  The

22   predicate act purportedly giving rise to RICO jurisdiction is too attenuated to satisfy the

23   requirement to plead proximate cause or sufficient RICO injury.

24   **C.      Complaint is Dismissed for Lack of Subject Matter Jurisdiction.**

25          Absent Plaintiffs' RICO claim, there is no independent basis for the exercise of federal

26   jurisdiction.  Pursuant to 28 U.S.C. § 1367(c)(3) , the Court declines to exercise supplemental

27   jurisdiction over Plaintiffs' state law claims and the complaint is dismissed in its entirety.

28

**D.    Tomanek's Motion to Dismiss is Granted.**

Because the Court has dismissed the RICO claim against Garibaldi and has dismissed the remaining state law claims, as Plaintiffs concede, the Court must dismiss the complaint as against Tomanek for lack of subject matter jurisdiction.

## CONCLUSION

Accordingly, Defendant Garibaldi's and Defendant Tomanek's motions to dismiss are GRANTED with prejudice.  The Court notes that Plaintiffs are not without a potential remedy in state court.

**IT IS SO ORDERED.**

Dated:  January 8, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

6

Exhibit "C"

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDITH MACIAS, et al.,

        Plaintiffs,                  No. C 07-03437 JSW

    v.

THOMAS J. TOMANEK, et al.,         **JUDGMENT**

        Defendants.

_____/

      Pursuant to the order granting Garibaldi's and Tomanek's motions to dismiss entered today, this action is DISMISSED. The Clerk is directed to close the file.

      **IT IS SO ORDERED AND ADJUDGED.**

Dated: January 8, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

Exhibit "D"

### *ALLMAN & NIELSEN, P.C.*
100 Larkspur Landing Circle, Suite 212
Larkspur, CA 94939

Ph:415 461 2700          Fax:415 461 2726

September 11, 2007

| | | |
|---|---|---|
| **Attention:** ████████ | File #: | FA-576 |
| | Inv #: | 656 |

**RE:**    Macias v. Tomanek

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Jul-25-07 | Telephone call from ████████ re new matter. | 0.10 | 16.50 | SBA |
| | Read/analyze complaint re new matter. | 0.60 | 99.00 | SBA |
| | Telephone call to ████████ re new matter. | 0.10 | 16.50 | SBA |
| Jul-26-07 | Telephone call with Chris and Liz Brancart re involvement in case, appearances, concerns re Tomanek not on RICO claim because not enterprise. | 0.20 | 33.00 | SBA |
| | Telephone call with ████████ | 0.20 | 33.00 | SBA |
| | Telephone call with Mr. Quint re representation ████████ | 0.40 | 66.00 | SBA |
| | Telephone call with Mr. Quint and Mr. Ciochon who represents Garibaldi re ████████ | 0.30 | 49.50 | SBA |
| | Letter to Mr. Quint re information re Garibaldi. | 0.10 | 16.50 | SBA |

| | | | | |
|---|---|---|---|---|
| | Letter to Mr. Ciochon re ███████ ███████ appearance. | 0.10 | 16.50 | SBA |
| | Letter to ████████ re acknowledgement. | 0.10 | 16.50 | SBA |
| | Letter to ██████ re representation. | 0.10 | 16.50 | SBA |
| | Letter to plaintiff's attorney re representation and time to respond. | 0.10 | 16.50 | SBA |
| | Draft/revise further letter to plaintiff's attorney confirming time to respond and re potential acceptance re appearance of Garibaldi. | 0.10 | 16.50 | SBA |
| | Legal Research re potential dispositive motion re preemption argument and re RICO requirements and state statutory requirements. | 2.50 | 412.50 | SBA |
| Jul-27-07 | Read/analyze letter from attorney Quint re tenant documentation. | 0.10 | 16.50 | SBA |
| Jul-28-07 | letter from attorney Quint re ████████ contact information and letter to him re same. | 0.10 | 16.50 | SBA |
| Jul-30-07 | Read/analyze tenant information and documentation re ████████ | 1.90 | 313.50 | SBA |
| | Read/analyze tenant information and documenation re ████████ | 0.90 | 148.50 | SBA |
| | Read/analyze tenant information and documenation re 205 plaintiffs. | 0.70 | 115.50 | SBA |
| | Letter to x 3 Garibaldi attorney re questions re ██████████████████████ | 0.10 | 16.50 | SBA |
| | Read/analyze letter from Carl Ciochan re responses to questions ████████████████ | 0.10 | 16.50 | SBA |
| | Legal Research re potential dispositive motion to dismiss ████████████████████ ████████████████████ | 1.60 | 264.00 | SBA |
| Jul-31-07 | Read/analyze multiple letters from attorney Quint and attorney Ciochon re representation concerns. | 0.10 | 16.50 | SBA |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Letter to x 2 to Mr. Ciochon ██████████ | 0.10 | 16.50 | SBA |
|  | Letter to Mr. Quint re proposed action re security deposit information. | 0.10 | 16.50 | SBA |
|  | Telephone call to ██████ re status. | 0.10 | 16.50 | SBA |
|  | Legal Research re FRCP 9 requirements of specificity on RICO claims ██████████ | 1.40 | 231.00 | SBA |
| Aug-01-07 | Read/analyze management agreement provisions ██████████ | 0.30 | 49.50 | SBA |
|  | Telephone call with ██████ re status and concerns of attorneys for Tomanek and Garibaldi. | 0.20 | 33.00 | SBA |
|  | Read/analyze letter from attorney Quint re concerns r ██████ | 0.10 | 16.50 | SBA |
|  | Telephone call to further ██████ re letter from attorney Quint/status. | 0.10 | 16.50 | SBA |
|  | Letter to Mr. Quint in response to his re representation concerns. | 0.10 | 16.50 | SBA |
|  | Telephone call to plaintiff's attorney Brancart re meeting pre appearance to discuss case. | 0.10 | 16.50 | SBA |
| Aug-02-07 | Read/analyze ██████████ | 0.80 | 132.00 | SBA |
|  | Letter to Mr. Ciochon requesting ██████ | 0.10 | 16.50 | SBA |
|  | Read/analyze letter from ██████ to Garibaldi and Tomanek re defense. | 0.10 | 16.50 | SBA |
| Aug-07-07 | letter from plaintiff's attorney Brancart re Tomanek appearance. | 0.10 | 16.50 | SBA |
|  | Letter to plaintiff's attorney re meeting. | 0.10 | 16.50 | SBA |

| | | | | |
|---|---|---|---|---|
| Aug-09-07 | Read/analyze letter from plaintiff's attorney re meeting and letter from ████████ re status. | 0.10 | 16.50 | SBA |
| | letter to ████████ re status re defense decisions. | 0.10 | 16.50 | SBA |
| | Letter to ████████ re discussion re status. | 0.10 | 16.50 | SBA |
| Aug-10-07 | Telephone call with Mr. Quint re meeting with plaintiff's attorney and need to meet with client. | 0.20 | 33.00 | SBA |
| | Letter to plaintiff's attorney re meeting and Quint participation in same. | 0.10 | 16.50 | SBA |
| | Telephone call with ████████ | 0.30 | 49.50 | SBA |
| Aug-13-07 | Telephone call with plaintiff's attorney Brancarts and personal attorney for client re potential early resolution and necessary information from both sides to put the case in a settlement posture. | 0.70 | 115.50 | SBA |
| | Telephone call with Mr. Quint and Mr. Ciochon re proposed action re necessary information to put case in settlement posture and re evaluation/assessment. | 0.50 | 82.50 | SBA |
| | Legal Research re RICO claim ████████ meaning and distinction of ordinary wear and tear versus damages, and review requirements for mail fraud claims. | 1.60 | 264.00 | SBA |
| Aug-15-07 | Meeting with -extended ████████ roundtable discussion re proposed action re defense and strategy. | 1.60 | 264.00 | SBA |
| Aug-16-07 | prepared roundtable/case management agreement with additions re legal research re plaintiff theories. | 1.80 | 297.00 | SBA |
| Aug-17-07 | Draft/revise additions to Roundtable report re liability exposure. | 0.30 | 49.50 | SBA |
| | Letter to ████████ re report. | 0.10 | 16.50 | SBA |

| Date | Description | Hours | Amount | |
|---|---|---|---|---|
| Aug-21-07 | review file re required items for voluntary exchange with plaintiff's attorney. | 0.10 | 16.50 | SBA |
| | Letter to attorneys for Garibaldi and client re conference to discuss appearance status and exchange with plaintiff's attorney. | 0.10 | 16.50 | SBA |
| | Letter to plaintiff's attorney in response to his re exchange of documentation. | 0.10 | 16.50 | SBA |
| | Letter to plaintiff's attorney re enlargement of time re response. | 0.10 | 16.50 | SBA |
| | Draft/revise stipulation re enlargement of time consistent with rules. | 0.20 | 33.00 | SBA |
| Aug-22-07 | letter from and letter to Mr. Ciochon re conference. | 0.10 | 16.50 | SBA |
| Aug-23-07 | Read/analyze further complaint re ███ motion viability. | 0.40 | 66.00 | SBA |
| | letter from counsel re and confirming conference to ██████████ | 0.10 | 16.50 | SBA |
| | Letters to defense counsel re defense meeting and stipulation. | 0.10 | 16.50 | SBA |
| | appeared at teleconference re defense meeting re ██████████ | 1.10 | 181.50 | SBA |
| | prepared for defense teleconference. | 0.30 | 49.50 | SBA |
| | Letter to plaintiff's attorney re and enclosing stipulation. | 0.10 | 16.50 | SBA |
| Aug-24-07 | Read/analyze stipulation executed by plaintiff's attorney and co-defendant attorney and submission to court. | 0.10 | 16.50 | SBA |
| Aug-27-07 | letter from multiple defense counsel re reliance requirement issues re RICO claim. | 0.10 | 16.50 | SBA |
| | letter from ██████ re conference. | 0.00 | 0.00 | SBA |
| | Telephone call with ██████████ | 0.20 | 33.00 | SBA |

|  |  |  |  |  |
|---|---|---|---|---|
| | Letter to all counsel re plaintiff's attorney position re reliance issue. | 0.10 | 16.50 | SBA |
| | Legal Research re ██ motion support. | 1.30 | 214.50 | SBA |
| | Draft/revise initial memorandum of points and authorities in support of ██████ motion | 1.10 | 181.50 | SBA |
| | prepared notice of ██ motion. | 0.10 | 16.50 | SBA |
| | Draft/revise ████████████ | 0.20 | 33.00 | SBA |
| Sep-03-07 | letter from plaintiff's attorney Brancart re document exchange concerns. | 0.10 | 16.50 | SBA |
| | Letter to Mr. Quint re reply to plaintiff's attorney re documents. | 0.10 | 16.50 | SBA |
| Sep-04-07 | Read/analyze various letter from co-attorneys and plaintiff's attorney re document exchange. | 0.10 | 16.50 | SBA |
| | Draft/revise letter to plaintiff's attorney and defense attorney re document concerns. | 0.10 | 16.50 | SBA |
| | Draft/revise letter to Garibaldi attorneys re ████████ | 0.10 | 16.50 | SBA |
| | Read/analyze complaint and tenant files of Macias, Mendieta and Duran re evidentiary support re ██ motion. | 0.90 | 148.50 | SBA |
| | Draft/revise declaration of ███████ | 0.70 | 115.50 | SBA |
| | Draft/revise further memorandum of points and authorities re ██ motion arguments. | 3.70 | 610.50 | SBA |
| Sep-05-07 | Telephone call with all defense counsel, including Garibaldi's and Tomanek's personal counsel, re strategy, motion to dismiss, potential joinder of Tomanek, probable non-pursuit of ██ motion, and disclosure deferral. ████████████ | 1.10 | 181.50 | SBA |
| | Telephone call with Matt Quint post defense | 0.10 | 16.50 | SBA |

conference re concerns re

| | | | | |
|---|---|---|---|---|
| | Draft/revise letter to plaintiff's attorney re impending motion to dismiss and deferral of disclosures. | 0.10 | 16.50 | SBA |
| | Legal Research re defense of lack of supplemental jurisdiction and review section 1367 and 1332 re same. | 0.30 | 49.50 | SBA |
| Sep-06-07 | letter from plaintiff's attorney re motion to dismiss and disclosure concerns. | 0.10 | 16.50 | SBA |
| | Letter to plaintiff's attorney re service issues and disclosures and letter to Mr. Quint re same. | 0.10 | 16.50 | SBA |
| | Legal Research re potential 12b6 motion with or separate from answer and analysis of cases re propriety of submission of dispositive motions with responsive pleading | 1.70 | 280.50 | SBA |
| Sep-10-07 | prepared litigation plan. | 0.70 | 115.50 | SBA |
| | Letter to multiple attorneys re further conference, question re validity of Tomanek appearance, and status of motion to dismiss. | 0.10 | 16.50 | SBA |
| | letter from attorneys for defense re defenses and further meetings. | 0.10 | 16.50 | SBA |
| | status report to ███ re status of response and abandonment of ███ motion | 0.10 | 16.50 | SBA |
| | prepared certification of interested parties and particular responses to 77 specific averments of plaintiffs. | 2.30 | 379.50 | SBA |
| Sep-11-07 | Read/analyze letter from Mr. Ciochon re | 0.10 | 16.50 | SBA |

dismiss and letter from Mr. Quint re motion thougts.

Letter to Mr. Ciochon re motion.                    0.10          16.50          SBA

Totals                                  40.70        $6,715.50

## DISBURSEMENTS

| | | |
|---|---|---|
| Jul-30-07 | Photocopying @ $.10 per page. 33 @ 0.10 | 3.30 |
| Aug-15-07 | Photocopying @ $.10 per page. 8 @ 0.10 | 0.80 |
| Aug-28-07 | Photocopying @ $.10 per page. 2 @ 0.10 | 0.20 |

Totals                                                        $4.30

**Total Fee & Disbursements**                              $6,719.80

**Balance Now Due**                                        $6,719.80

TAX ID Number      94-3268610

**ALLMAN & NIELSEN, P.C.**
100 Larkspur Landing Circle, Suite 212
Larkspur, CA 94939

Ph:415 461 2700          Fax:415 461 2726

October 17, 2007

**Attention:** ████████

File #:      FA-576
Inv #:       685

**RE:**   Macias v. Tomanek

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Sep-12-07 | Read/analyze explanation of ████ Garibaldi re ████ | 0.10 | 16.50 | SBA |
| | Telephone call with all defense counsel re strategy and concerns re ████ | 0.80 | 132.00 | SBA |
| | Telephone call with ████ | 0.20 | 33.00 | SBA |
| | Letter to ████ recommending ████ | 0.10 | 16.50 | SBA |
| | Legal Research re ████ | 1.40 | 231.00 | SBA |
| | Telephone call from Mr. Quint re client meeting. | 0.10 | 16.50 | SBA |
| | Letter to Mr. Blackman re ████ contact information ████ | 0.10 | 16.50 | SBA |
| | letter from and letter ████ re | 0.10 | 16.50 | SBA |

| | | | | |
|---|---|---|---|---|
| | Letter to all defense counsel re ████ ██████ | 0.10 | 16.50 | SBA |
| | Read/analyze Garibaldi initial draft re motion to dismiss re failure to state a claim. | 0.30 | 49.50 | SBA |
| | Letter to attorney for Garibaldi re specific feedback and authorities re motion to dismiss. | 0.30 | 49.50 | SBA |
| Sep-13-07 | prepared certification of interested parties. | 0.10 | 16.50 | SBA |
| | prepared draft ████████ ██████ | 0.40 | 66.00 | SBA |
| | Legal Research re motion to dismiss for lack of subject matter jurisdiction re pendent jurisdiction, original jurisdiction, court's requirements re motion, and case law in support. | 2.40 | 396.00 | SBA |
| | prepared notice of motion to dismiss and points and authorities re support for same. | 1.60 | 264.00 | SBA |
| | Letter to attorney Quint re motion to dismiss. | 0.10 | 16.50 | SBA |
| | Letter to attorney Blackman and Ciochon re our motion to dismiss. | 0.10 | 16.50 | SBA |
| | telephone call from attorney Blackman re approbation of motion to dismiss. | 0.10 | 16.50 | SBA |
| | letter from attorney Quint and letter from attorney Ciochon re defendants' motions. | 0.10 | 16.50 | SBA |
| | Read/analyze and prepared revisions of attorney Quint to motion to dismiss. | 0.20 | 33.00 | SBA |
| | Draft/revise further motion to dismiss. | 0.40 | 66.00 | SBA |
| | Letter to defense counsel re motion to dismiss. | 0.10 | 16.50 | SBA |
| | prepared proposed order granting motion to dismiss. | 0.20 | 33.00 | SBA |
| | Read/analyze Garibaldi revised motion to dismiss. | 0.30 | 49.50 | SBA |
| | Letter to Mr. Blackman re revised motion of Garibaldi. | 0.10 | 16.50 | SBA |

| | | | | |
|---|---|---|---|---|
| Sep-14-07 | Read/analyze letter from ████████ and Mr. Blackman re communication between ██████ | 0.10 | 16.50 | SBA |
| | Read/analyze ██████████ ████████████ to client Tomanek. | 0.10 | 16.50 | SBA |
| | Telephone call with ██████████ re status of communications with ██████ | 0.10 | 16.50 | SBA |
| | Letter to attorney Blackman re concerns re our representation. | 0.10 | 16.50 | SBA |
| | letter from Mr. Quint re client meeting. | 0.10 | 16.50 | SBA |
| | Letter to Mr. Quint re client meeting. | 0.10 | 16.50 | SBA |
| | letter from plaintiff's attorney Brancart, Liz, re question re hearing on motion. | 0.10 | 16.50 | SBA |
| | Letter to plaintiff's attorney x 2 re hearing issues. | 0.10 | 16.50 | SBA |
| | Read/analyze judge White's ruling re briefing on motion to dismiss of Tomanek. | 0.10 | 16.50 | SBA |
| Sep-17-07 | letter from Mr. Quint and Mr. Blackman re submissions. | 0.10 | 16.50 | SBA |
| | Letter to Mr. Quint re submissions. | 0.10 | 16.50 | SBA |
| | Read/analyze court's ruling re Garibaldi briefing. | 0.10 | 16.50 | SBA |
| Sep-18-07 | Telephone call from and telephone call to Mr. Ciochon re communications with ██████ ████████████ | 0.10 | 16.50 | SBA |
| | read file in preparation for client meeting. | 0.80 | 132.00 | SBA |
| Sep-19-07 | Travel to/from San Francisco. | 1.70 | 280.50 | SBA |
| | Meeting with attorney Quint and participated in defense phone conference ██████ ██████████ meeting with client ██████████ | 2.40 | 396.00 | SBA |

|  | Telephone call with attorney Blackman and plaintiff's attorney re potential change in disclosure and case Management Conference and hearing date re dispositive motions. | 0.20 | 33.00 | SBA |
|---|---|---|---|---|
| Sep-20-07 | Letter to Mr. Blackman re mistake re stipulation. | 0.10 | 16.50 | SBA |
|  | Read/analyze revised stipulation and order. | 0.10 | 16.50 | SBA |
|  | Read/analyze letter from attorney Blackman re stipulation re disclosures and case Management Conference. | 0.10 | 16.50 | SBA |
|  | Letter to Mr. Blackman re suggested revisions to stipulation. | 0.10 | 16.50 | SBA |
| Sep-21-07 | Read/analyze court's further ruling re case Management Conference and hearing re motions to dismiss. | 0.10 | 16.50 | SBA |
| Sep-25-07 | Read/analyze letter from Mr. Ciochon to Ms. Martin re ███████████ | 0.10 | 16.50 | SBA |
|  | Read/analyze Ciochon analysis re application of ███████ | 0.10 | 16.50 | SBA |
| Sep-26-07 | letter from Mr. Blackman re ██████ | 0.10 | 16.50 | SBA |
| Sep-27-07 | Telephone call with all defense attorneys re status and deferral of rule 26 obligations and re concerns re ████████████ ████████████████████ | 0.60 | 99.00 | SBA |
| Sep-28-07 | Telephone call to ████████ re clarification re our prior draft motion re ███████████ | 0.10 | 16.50 | SBA |
|  | Letter to Mr. Quint re re clarification re our prior draft motion re ████████████ ██████ | 0.10 | 16.50 | SBA |
| Oct-01-07 | letter from Mr. Quint ██████ re motion ██ ████████ | 0.10 | 16.50 | SBA |
|  | Letter to Mr. Quint re ███████████ | 0.10 | 16.50 | SBA |

Invoice #:    685                                Page   5                      October 17, 2007

| | | | | |
|---|---|---|---|---|
| Oct-02-07 | Telephone call from and telephone call to Mr. Quint re ▮▮▮▮▮▮▮▮▮ | 0.20 | 33.00 | SBA |
| | read file re preparation for teleconference with defense counsel re issue of further motion re first amended complaint. | 0.60 | 99.00 | SBA |
| Oct-03-07 | Telephone call with all defense counsel re approach and potential motion re first amended complaint. | 0.80 | 132.00 | SBA |
| | Telephone call with x 3 ▮▮▮▮▮▮ re concerns re status and representation of client. | 0.40 | 66.00 | SBA |
| | Read/analyze letter from Mr. Quint ▮▮▮▮▮▮▮▮ | 0.10 | 16.50 | SBA |
| | Telephone call with plaintiff's attorney Brancart re okay to respond to first amended complaint, potential fees/costs and settlement, hearing schedule. | 0.30 | 49.50 | SBA |
| | Telephone call to Mr. Blackman re communication with plaintiff's attorney. | 0.10 | 16.50 | SBA |
| | Letter to all counsel re communication with plaintiff's attorney Chris Brancart. | 0.10 | 16.50 | SBA |
| | Read/analyze letter from ▮▮▮▮▮▮▮▮ | 0.10 | 16.50 | SBA |
| | Read/analyze rules re hearing re second potential motion to dismiss. | 0.10 | 16.50 | SBA |
| Oct-09-07 | Read/analyze letter from attorney Quint to ▮▮ | 0.10 | 16.50 | SBA |
| | letter from and letter to Mr. Ciochon re status of ▮▮▮▮▮▮ | 0.10 | 16.50 | SBA |
| | Telephone call from ▮▮▮▮▮▮ re representation of Garibaldi and status. | 0.10 | 16.50 | SBA |
| Oct-10-07 | Read/analyze plaintiff estimate re fees and costs incurred. | 0.10 | 16.50 | SBA |
| | status report to ▮▮▮▮▮ re concerns re plaintiff fees and exposure. | 0.10 | 16.50 | SBA |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Letter to all defense counsel re plaintiff fees incurred. | 0.10 | 16.50 | SBA |
|  | Read/analyze letter from attorney Quint re ████ attorney. | 0.10 | 16.50 | SBA |
| Oct-11-07 | Telephone call with defense counsel re status, second motion to dismiss, pros and cons of ████ | 1.50 | 247.50 | SBA |
|  | Read letter from x 2 attorney Blackman re defense conferences. | 0.10 | 16.50 | SBA |
|  | Legal Research re ████ | 1.30 | 214.50 | SBA |
| Oct-16-07 | Telephone call with all defense counsel re status of motions to dismiss. | 0.50 | 82.50 | SBA |
|  | Read/analyze letter from ████ to Mr. Ciochon re Garibaldi representation. | 0.10 | 16.50 | SBA |
|  | Letter to ████ re questions re Martin letter to Ciochon. | 0.10 | 16.50 | SBA |
|  | Read/analyze Garibaldi draft motion to dismiss first amended complaint and Mr. Quint's revisions thereto. | 0.30 | 49.50 | SBA |
|  | Draft/revise motion to dismiss re first amended class action complaint. | 0.40 | 66.00 | SBA |
|  | Read/analyze and compare complaint and first amended class action allegations for use in dispositive motion. | 0.60 | 99.00 | SBA |
| Oct-17-07 | Read/analyze letter from plaintiff's attorney and letter from attorney Blackman re new motions and effect on case Management Conference. | 0.10 | 16.50 | SBA |
| Oct-18-07 | Letter to Mr. Quint re submission of motion. | 0.10 | 16.50 | SBA |
|  | Read/analyze final submission of Garibaldi re motion to dismiss. | 0.20 | 33.00 | SBA |

| | | | | |
|---|---|---|---|---|
| | Draft/revise motion to dismiss re review of specific allegations re reliance and consistent with Garibaldi submission. | 1.10 | 181.50 | SBA |
| Oct-19-07 | Telephone call from ███████████ ████████████████████████ | 0.10 | 16.50 | SBA |
| | Totals | 28.90 | $4,768.50 | |

## DISBURSEMENTS

| | | |
|---|---|---|
| Jul-26-07 | Outside printing re Macias; view/print documents from PACER 3 @ 0.08 | 0.24 |
| Aug-22-07 | Outside printing re Macias; view/print documents from PACER 11 @ 0.08 | 0.88 |
| Sep-13-07 | Online research re: Macias ███████████ | 15.21 |
| Sep-19-07 | Out-of-town travel -parking | 24.50 |
| | Out-of-town travel -bridge toll | 5.00 |
| | Out-of-town travel -mileage  31 @ 0.48 | 14.88 |
| Oct-01-07 | Court Fees re: Macias 9/12 | 15.21 |
| Oct-03-07 | Photocopying @ $.10 per page.  913 @ 0.10 | 91.30 |
| | Totals | $167.22 |

| | |
|---|---|
| **Total Fee & Disbursements** | $4,935.72 |
| Previous Balance | 6,719.80 |
| **Balance Now Due** | $11,655.52 |

TAX ID Number     94-3268610

# *ALLMAN & NIELSEN, P.C.*
100 Larkspur Landing Circle, Suite 212
Larkspur, CA 94939

Ph:415 461 2700          Fax:415 461 2726

January 18, 2008

**Attention:** ██████████

File #:      FA-576
Inv  #:        726

**RE:**   Macias v. Tomanek

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Oct-22-07 | Telephone call from Ms. Martin re information re motions. | 0.10 | 16.50 | SBA |
| Oct-25-07 | letter from plaintiff's attorney re stipulation re briefing re second motion. | 0.10 | 16.50 | SBA |
| | Letter to plaintiff's attorney re stipulation. | 0.10 | 16.50 | SBA |
| Oct-26-07 | Read/analyze letter from Mr. Ciochon to Ms. Martin re  | 0.10 | 16.50 | SBA |
| | Read/analyze and execute stipulation re briefing. | 0.10 | 16.50 | SBA |
| | Read/analyze court's ruling re briefing. | 0.10 | 16.50 | SBA |
| Oct-29-07 | Letter to attorney Blackman re concern re reply briefing. | 0.10 | 16.50 | SBA |
| Nov-12-07 | Read/analyze plaintiff opposition to motion of Garibaldi. | 0.30 | 49.50 | SBA |
| | Read/analyze plaintiff opposition to motion of Tomanek. | 0.10 | 16.50 | SBA |
| Nov-13-07 | Letter to Mr. Quint re and enclosing plaintiff opposition papers re pending motions to dismiss. | 0.10 | 16.50 | SBA |

| Nov-15-07 | Letter to Mr. Blackman and Ciochon re teleconference to discuss reply. | 0.10 | 16.50 | SBA |
|---|---|---|---|---|
| | letter from Mr. Blackman and Mr. Ciochon re participation in meeting by telephone to discuss reply strategy. | 0.10 | 16.50 | SBA |
| Nov-16-07 | appeared at and participated in joint defense conference re plaintiff opposition to motions to dismiss and strategy re reply approach, settlement, potential discovery. | 0.90 | 148.50 | SBA |
| | Review Shmuck decision and cases cited in plaintiff opposition in preparation for teleconference with defense attorneys. | 1.20 | 198.00 | SBA |
| Nov-18-07 | letter from Mr. Quint re status and reply conference. | 0.10 | 16.50 | SBA |
| Nov-19-07 | letter from Mr. Ciochon re preparation of reply to opposition re motion to dismiss. | 0.10 | 16.50 | SBA |
| | Legal Research further re cases upon which plaintiff opposition relies, including shepardize and review all cases in ninth circuit re Schmuck decision of U.S. Supreme Court. | 1.40 | 231.00 | SBA |
| Nov-26-07 | Letter to attorney Quint re reply concerns and re telephone call from ▮▮▮▮▮▮ | 0.10 | 16.50 | SBA |
| | Letter to attorney Ciochon re concerns re submission of reply briefs. | 0.10 | 16.50 | SBA |
| | letter from Mr. Ciochon re reply strategy. | 0.10 | 16.50 | SBA |
| | Read/analyze proposed reply brief of Garibaldi. | 0.40 | 66.00 | SBA |
| | Letter to Mr. Ciochon re suggested revisions/comments re reply of Garibaldi. | 0.10 | 16.50 | SBA |
| | Draft/revise further reply of Tomanek to opposition of plaintiff to motion to dismiss. | 0.90 | 148.50 | SBA |
| | Legal Research further re shepardize all cases cited by plaintiff in opposition to motion to dismiss and review for application to our case. | 0.70 | 115.50 | SBA |
| Nov-28-07 | letter from and letter to Mr. Quint re reply brief. | 0.10 | 16.50 | SBA |

| Date | Description | Hours | Amount | |
|---|---|---|---|---|
| Dec-11-07 | Read/analyze multiple letter from Mr. Ciochon, Mr. Quint re ███████ ███████ and proposed action re same. | 0.10 | 16.50 | SBA |
| | Letter to all co-counsel re proposed action re ███████ | 0.10 | 16.50 | SBA |
| | Read/analyze stipulation executed by all counsel re case Management Conference and adr deadlines. | 0.10 | 16.50 | SBA |
| | Read/analyze proposed stipulation re deferral of case Management Conference and adr pending motion disposition. | 0.10 | 16.50 | SBA |
| | Letter to Mr. Blackman re stipulation. | 0.10 | 16.50 | SBA |
| Dec-13-07 | Read/analyze court's ruling granting stipulation. | 0.10 | 16.50 | SBA |
| Dec-14-07 | Telephone call with x 2 ███████ | 0.40 | 66.00 | SBA |
| | Letter to co-counsel re contact with ███████ | 0.10 | 16.50 | SBA |
| | letter from counsel re ███████ | 0.10 | 16.50 | SBA |
| Jan-04-08 | Telephone call to attorney Ciochon re status and proposed action re tenant files/hearings. | 0.20 | 33.00 | SBA |
| Jan-07-08 | Read/analyze two additional and newly added plaintiff tenant files from attorney for Garibaldi, Salambue and Duran. | 1.40 | 231.00 | SBA |
| | letter from multiple defense counsel re pre hearing conference. | 0.10 | 16.50 | SBA |
| | Letter to defense counsel re pre hearing conference. | 0.10 | 16.50 | SBA |
| Jan-08-08 | status report to ███████ re order re motion to dismiss. | 0.10 | 16.50 | SBA |
| | Letter to defense counsel re ruling granting motions to dismiss. | 0.10 | 16.50 | SBA |
| | letter from defense counsel re necessity to retain defense meeting to discuss ruling ramifications. | 0.10 | 16.50 | SBA |

| | | | | |
|---|---|---|---|---|
| | Read/analyze court's ruling granting both defendants' motions to dismiss. | 0.60 | 99.00 | SBA |
| Jan-09-08 | Telephone call with defense counsel re strategy post judgment and potential fee motion. | 0.70 | 115.50 | SBA |
| | Letter to multiple defense counsel re fee motion issues. | 0.20 | 33.00 | SBA |
| | Letter to plaintiff's attorney re meet and confer conference. | 0.10 | 16.50 | SBA |
| | status report to ███████ re proposed further action/strategy. | 0.10 | 16.50 | SBA |
| | Telephone call to ███████ re status post judgment. | 0.10 | 16.50 | SBA |
| | letter from multiple defense counsel re judgment, order, proposed action, potential fee motion issues. | 0.10 | 16.50 | SBA |
| | Read/analyze court's judgment on order of dismissal. | 0.10 | 16.50 | SBA |
| | Read/analyze evidence re potential fee motion as post judgment strategy. | 0.80 | 132.00 | SBA |
| | Legal Research re potential motion for attorney's fees, including analysis of Rule 54 and meet and confer requirements and review of ███████ case, ███████ and shepardize all cases re same and review ███████ of Ninth Circuit and ███████ cases from state law. | 1.20 | 198.00 | SBA |
| Jan-10-08 | Telephone call with ███████ re plan of action re ruling dismissing action from federal court and confirm necessity and okay for legal Research in excess of three hours re potential fee motion. | 0.30 | 49.50 | SBA |
| | Telephone call with attorney Blackman re concerns and debriefing re telephone call with plaintiff's attorneys. | 0.20 | 33.00 | SBA |
| | status report to ███████ re motion. | 0.10 | 16.50 | SBA |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Letter to plaintiff's attorney re meeting to discuss post ruling fee motion/settlement. | 0.10 | 16.50 | SBA |
|  | letter from plaintiff's attorney re meeting re meet and confer. | 0.10 | 16.50 | SBA |
|  | met and conferred with plaintiff's attorney re fee motion and disputed viability of same. | 0.30 | 49.50 | SBA |
|  | Legal Research re authorization re fee motion in light of dismissal by court, including ▮▮▮▮ ▮▮▮▮ and shepardize same and review shepardized cases for same, rules 54-6 | 2.70 | 445.50 | SBA |
|  | Letter to multiple defense counsel re proposed action, ▮▮▮▮ | 0.60 | 99.00 | SBA |
| Jan-11-08 | prepared draft declaration in support of fee motion per court requirements. | 0.80 | 132.00 | SBA |
|  | Draft/revise and prepared initial draft re memorandum of points and authorities in support of motion for fees. | 1.30 | 214.50 | SBA |
| Jan-14-08 | Read/analyze billings re submission to support fee motion and prepared redactions re privileged matters. | 1.30 | 214.50 | SBA |
|  | Read/analyze and review Chang decisions re distinguishable from our case and draft/revise letter to plaintiff's attorney re same in further meet and confer. | 0.40 | 66.00 | SBA |
|  | Draft/revise further re declaration to support fee submission consistent with rules. | 0.60 | 99.00 | SBA |
|  | Legal Research further re support for fee motion and review legal authorities re application of language of contract to case, including review and analysis of ▮▮▮▮ ▮▮▮▮ | 2.40 | 396.00 | SBA |
| Jan-15-08 | Draft/revise memorandum of points and authorities in support of fee motion. | 3.90 | 643.50 | SBA |
|  | Read/analyze plaintiff first amended complaint allegations and allegations of plaintiff | 1.20 | 198.00 | SBA |

|  | opposition to motion to dismiss re support for fee motion. | | | |
| | Draft/revise letter to defense counsel re status of fee motion submission and re declaration requirements. | 0.20 | 33.00 | SBA |
| Jan-17-08 | Letter to defense attorneys re draft motion and status of finalization. | 0.10 | 16.50 | SBA |
| | Draft/revise further motion for fees, including additional legal Research re fee entitlement and unpublished decision, ████████ shepardize cases to which reference is made in points and authorities. | 4.30 | 709.50 | SBA |
| | Legal Research re support for fee motion, re prevailing party status, "on the contract" interpretation, application of terms of lease to construction of action as contractual, and fees on fees. | 2.60 | 429.00 | SBA |
| | Draft/revise further points and authorities re fee motion. | 1.30 | 214.50 | SBA |
| | Draft/revise declaration to include evidence re order, judgment and lease agreements. | 0.30 | 49.50 | SBA |
| | Draft/revise further itemization of fees incurred in defense. | 0.80 | 132.00 | SBA |
| Jan-18-08 | Draft/revise tables re fee motions, including review of authorities and contents. | 0.60 | 99.00 | SBA |
| | Letter to Mr. Ciochon re lease agreements. | 0.10 | 16.50 | SBA |
| | letter from Mr. Ciochon re lease agreements. | 0.10 | 16.50 | SBA |
| | Totals | 41.60 | $6,864.00 | |

## DISBURSEMENTS

| Oct-30-07 | Photocopying @ $.10 per page.  18 @ 0.10 | 1.80 |
| Jan-09-08 | Photocopying @ $.10 per page.  20 @ 0.10 | 2.00 |
| Jan-15-08 | Photocopying @ $.10 per page.  122 @ 0.10 | 12.20 |
| | Totals | $16.00 |

| | |
|---|---|
| **Total Fee & Disbursements** | **$6,880.00** |
| Previous Balance | 11,655.52 |
| **Balance Now Due** | **$18,535.52** |

TAX ID Number    94-3268610

### *ALLMAN & NIELSEN, P.C.*
100 Larkspur Landing Circle, Suite 212
Larkspur, CA 94939

Ph:415 461 2700          Fax:415 461 2726

January 22, 2008

**Attention:** 

File #:          FA-576
Inv #:          Sample

**RE:**   Macias v. Tomanek

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Jan-19-08 | Legal Research re further points for fee motion per co-counsel input and revised draft. | 2.40 | 396.00 | SBA |
| | Letter to counsel re revised draft re fee motion. | 0.10 | 16.50 | SBA |
| Jan-21-08 | Telephone call with x 2 counsel for Garibaldi re fee motion concerns/strategy and submission of one points and authorities jointly. | 0.70 | 115.50 | SBA |
| | Legal Research re further points and arguments re fee motion. | 3.30 | 544.50 | SBA |
| Jan-22-08 | Telephone call with counsel re fee motion conerns. | 0.30 | 49.50 | SBA |
| | letter from counsel re fee motion questions. | 0.10 | 16.50 | SBA |
| | Letter to counsel re fee motion concerns x 3. | 0.10 | 16.50 | SBA |
| | Draft/revise declaration of Sara Allman. | 0.30 | 49.50 | SBA |
| | Legal Research further re points and draft/revise fee arguments, shepardize and analyze authorities, finalize for submission. | 2.60 | 429.00 | SBA |
| | Draft/revise tables of contents and authorities. | 0.30 | 49.50 | SBA |

| | | | |
|---|---|---|---|
| Read/analyze proposed submissions of Garibaldi counsel and declarations of other counsel in support of fee motion. | 0.20 | 33.00 | SBA |
| Totals | 10.40 | $1,716.00 | |

| | |
|---|---|
| **Total Fee & Disbursements** | **$1,716.00** |
| Previous Balance | 18,535.52 |
| **Balance Now Due** | **$20,251.52** |

TAX ID Number      94-3268610