1  BRANCART & BRANCART
       Christopher Brancart (SBN 128475)
2      Elizabeth Brancart (SBN 122092)
    Post Office Box 686
3  Pescadero, CA 94060
    Tel:    (650) 879-0141
4  Fax:    (650) 879-1103
    cbrancart@brancart.com
5  ebrancart@brancart.com

6  Attorneys for Plaintiffs

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11  **EDITH MACIAS, individually and on**          )    **Case No. C07-3437 JSW**
    **behalf of similarly situated**               )
    **individuals; HOTON DURAN;**                  )    **PLAINTIFFS' OPPOSITION TO**
12  **TIFFANY HUYNH; AURA MENDIETA;**              )    **DEFENDANTS' MOTIONS TO BE**
    **WILLIAM LABOY; MIGUEL ACOSTA;**             )    **DECLARED PREVAILING PARTIES**
13  **CRUZ ACOSTA; CUAUHTEMOC**                    )    **AND FOR AN AWARD OF**
    **TORAL; and TERESA VILLEGAS,**                )    **ATTORNEYS' FEES AND COSTS**
14                                                  )
                                                    )
15              **Plaintiffs,**                     )    *Matter Referred to Magistrate Judge*
                                                    )    *Elizabeth D. LaPorte (Doc. 43)*
16         **vs.**                                  )
                                                    )    <u>Hearing:</u>  None scheduled
17  **THOMAS J. TOMANEK; and**                     )
    **MARK GARIBALDI, individually**               )
18  **and doing business as THE**                   )
    **GARIBALDI COMPANY,**                          )
19                                                  )
                                                    )
20              **Defendants.**                     )
    _____ )

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

# TABLE OF CONTENTS

2

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

3

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

4

II.  PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

5

III.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

6

IV.  SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

7

V.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

8

    A.  Defendants' Motions Should be Denied Because They are Not the
9
    Prevailing Parties on a Contract.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

10
        1.  The narrow fee provision in this case applies only to
        contract claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
11

12
        2.  Claims based on fraud, such as RICO, are not "on a
        contract.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

13
        3.  The California Supreme Court's Santisas opinion
        precludes defendants' argument that § 1717 covers any
14
        claim "involving" a contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

15
        4.  Allegations regarding their lease agreements with
        defendants does not turn plaintiffs' RICO action into a claim
16
        "on a contract.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

17
        5.  Although a contract may authorize an award of attorneys'
        fees in a RICO case, the lease agreement in this case does
18
        not. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

19
        6.  The fee provision in this case, by its terms, cannot apply
        to this RICO action.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
20

21
        7.  Defendants cannot be deemed to be prevailing parties
        under § 1717 because there has been no final resolution of
        any claim "on the contract.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
22

23
        8.  There is no issue of allocating time spent on tort versus
        contract claims in this case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

24
    B.  The Amount of Fees Sought by Defendants Should be Reduced, if
    Any Are Awarded at all.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
25

VI.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

ii

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3  3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co., 990 F.2d 487 (9th Cir. 1993) . . . . . . . 7

4  Berkla v Corel Corp., 302 F.3d 909 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 7

5  Brady v. Dairy Fresh Products Co., 974 F.2d 1149 (9th Cir. 1992). . . . . . . . . . . . . . 9

6  Chang v. Chen, 95 F.3d 27 (9th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15, 16

7  Casella v. SouthWest Dealer Services, Inc., 157 Cal. App.4th 1127 (2007). . . . . . . 7, 9

8  Childers v. Edwards, 48 Cal. App.4th 1544 (1996).. . . . . . . . . . . . . . . . . . . . . . . . . . 9

9  El Escorial Owners' Ass'n v. DLC Plastering, Inc., 154 Cal. App.4th 1337 (2007). . . . . 7

10  Gil v Mansano, 121 Cal. App.4th 739 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

11  Graham v. Scissor-Tail, Inc., 28 Cal.3d 807 (1981). . . . . . . . . . . . . . . . . . . . . . . . . 13

12  Hasler v. Howard, 120 Cal. App. 4th 1023 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . 7

13  Hsu v. Abbara, 9 Cal. 4th 863 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

14  In re Baroff, 105 F.3d 439 (9th Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

15  In re Davison, 289 B.R. 716 (9th Cir. B.A.P. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 10

16  In re Estate of Drummond, 149 Cal. App.4th 46 (2007). . . . . . . . . . . . . . . . . . . . . . 19

17  International Marble of Colorado v. Congress Financial Corp.
18      465 F. Supp. 2d 993 (C.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19  Jones v. Kelly, 208 Cal. 251 (1929). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

20  Lazar v. Superior Court, 12 Cal. 4th 631 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21  McKenzie v. Kaiser-Aetna, 55 Cal. App.3d 84 (1976). . . . . . . . . . . . . . . . . . . . . . . . 9

22  Plum Tree, Inc. v. N. K. Winston Corp., 351 F. Supp. 80 (S.D.N.Y. 1972).. . . . . . . . . 12

23  Price Bros. Co. v. Olin Const. Co., Inc., 528 F. Supp. 716 (S.D.N.Y. 1981).. . . . . . . 12

24  Santisas v. Goodin, 17 Cal. 4th 599 (1998). . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9, 10

25  Stitt v. Williams, 919 F.2d 516 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 16

26  Stout v. Turney, 22 Cal. 3d 718 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

27  Voth v. Wasco Public Util. Dist., 56 Cal. App.3d 353 (1976). . . . . . . . . . . . . . . . 13, 14

28  Xuereb v. Marcus & Millichap, Inc., 3 Cal. App.4th 1338 (1992) . . . . . . . . . . . . . . . . 8

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

iii

1

**Statutes**

2

Racketeer Influenced and Corrupt Organizations Act

3

     18 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

     18 U.S.C. § 1964(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

Fed. R. Evid. 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

7

Cal. Bus. & Prof. Code § 17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8

Cal. Civ. Code § 1717. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

9

Cal. Civ. Code § 1950.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 12, 14

10

Cal. Civ. Proc. Code § 1021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

**Other Authorities**

12

Restatement (Second) of Torts § 530 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

1

## I. **INTRODUCTION**

2      Defendants Thomas J. Tomanek and Mark Garibaldi have filed motions to be

3   declared the prevailing parties in this action pursuant to California Civil Code § 1717

4   and for an award of costs and attorneys' fees.  (See Doc. 37, 38, 39, 40, 41 and 42.)

5   Together, defendants seek a total of $85,626.00 in attorneys' fees and $3,811.40 in

6   costs[1] following the Court's dismissal of plaintiffs' RICO claims with prejudice and

7   dismissal of their related state claims for lack of subject-matter jurisdiction.  Defendant

8   landlords assert that they should be deemed the prevailing parties in this action based

9   on an attorneys' fees provision in the lease agreements between them and plaintiffs,

10  their former tenants.  Their motions should be denied in their entirety because

11  defendants do not qualify as prevailing parties on a contract under § 1717.

12

## II. **PROCEDURAL BACKGROUND**

13     Plaintiff Edith Macias, on behalf of herself and a class of similarly situated

14  persons, and plaintiffs Hoton Duran, Tiffany Huynh, Aura Mendieta, William Laboy,

15  Miguel Acosta, Cruz Acosta, Cuauhtemoc Toral and Teresa Villegas filed this action

16  against defendants Mark Garibaldi, individually and doing business as The Garibaldi

17  Company (collectively referred to as "Garibaldi"), and Thomas J. Tomanek.  Plaintiffs

18  are former tenants of the Rancho Luna & Rancho Sol Apartments, a large rental

19  complex located in Fremont, California.  Defendant Tomanek is the owner of the

20  complex, and Garibaldi is the property manager.  (Doc. 1, 19, ¶¶ 4-14.)  Plaintiffs

21  alleged that defendant Garibaldi violated the Racketeer Influenced and Corrupt

22  Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., by engaging in a scheme of

23  misrepresentation and other unlawful acts in connection with obtaining and retaining

24  tenants' security deposits and demanding additional payments for alleged property

25  damage upon move-out.  Plaintiffs alleged pendant state claims against both Garibaldi

26

27

28      [1]Tomanek seeks $35,664.00 in fees and $187.53 in costs.  Garibaldi seeks
$49,962.00 in fees and $3,623.87 in costs.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING**
**PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

1   and Tomanek for violation of California Business & Professions Code § 17200, violation

2   of California Civil Code § 1950.5 (relating to security deposits), for fraud, tortious breach

3   of the implied covenant of good faith and fair dealing, unjust enrichment, negligence

4   and defamation (of certain individual plaintiffs).  (Doc. 19, ¶¶ 75-104.)

5         Defendants filed motions to dismiss plaintiffs' complaint pursuant to Rule

6   12(b)(6) for failure to state a claim under RICO, and to dismiss plaintiffs' remaining

7   claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  (Doc. 7, 11.)

8   Plaintiffs then filed a first amended complaint on September 28, 2007, revising their

9   RICO allegations and adding Kapika Salambue and Marina Duran as plaintiffs.  (Doc.

10   19 ["FAC"].)  Defendants again moved to dismiss the first amended complaint for failure

11   to state a claim under RICO, and to dismiss plaintiffs' remaining claims for lack of

12   subject matter jurisdiction pursuant to Rule 12(b)(1).  (Doc. 20, 22.)

13         On January 8, 2008, Judge White issued an order granting defendants' motion to

14   dismiss the RICO claim, finding that the allegations were insufficient to support a RICO

15   violation based upon mail fraud.  (Doc. 35, pp. 2-5.)  The Court declined to exercise

16   supplemental jurisdiction over plaintiffs' state law claims, and dismissed the complaint

17   in its entirety.  (Doc. 35 p. 5.)  The Court concluded by stating that defendants' motions

18   were granted with prejudice, but noted "that Plaintiffs are not without a potential remedy

19   in state court."  (Doc. 35, p. 6.)  Thereafter, the Court dismissed the case.  (Doc. 36.)

20   Defendants' motions for attorneys' fees followed.

21                     **III.  RELEVANT FACTS**

22         The first amended complaint described an alleged scheme by Garibaldi to

23   defraud tenants out of the rightful return of their security.  Pursuant to Civil Code §

24   1950.5(e), a landlord "may not assert a claim against the tenant or the security for

25   damages to the premises or any defective conditions that preexisted the tenancy, for

26   ordinary wear and tear or the effects thereof, whether the wear and tear preexisted the

27   tenancy or occurred during the tenancy, or for the cumulative effects of ordinary wear

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING**
**PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

1 | and tear occurring during any one or more tenancies."[2]  Plaintiffs alleged that, upon

2 | move-in, they provided defendants with significant security deposits based on the

3 | misrepresentation that they would not be charged for the ordinary wear and tear on the

4 | property.  Later, when they vacated the apartments, plaintiffs allege that they were, in

5 | fact, charged for the ordinary wear and tear to the property, often in amounts greater

6 | than the security deposit.  Plaintiffs further alleged that defendant Garibaldi engaged in

7 | a pattern of racketeering activity in violation of RICO by engaging in a scheme of

8 | misrepresentation to induce them to part with their security deposits, that he did so

9 | knowing he would not refund those deposits, and that he used the U.S. mails in

10 | furtherance of that scheme when he mailed the security deposit closing statements to

11 | plaintiffs advising them of dispositions of the security deposits.  (Doc. 19, FAC ¶¶ 22-

12 | 59, 66-72.)

13 |       Each of the eleven plaintiffs, residing in eight separate households, alleged that

14 | they were victims of Garibaldi's scheme to defraud, based on facts similar to those

15 | alleged by plaintiffs Edith Macias and Hoton Duran in the first amended complaint:

16 |       17.    On October 21, 2004, plaintiffs Edith Macias and Hoton Duran

17 | entered into a written lease agreement with The Garibaldi Company at the
      Rancho Luna & Rancho Sol Apartments for rental of apartment 246 in the

18 | Rancho Luna section of the complex. Plaintiffs were assisted in the

19 | execution of the lease agreement by an individual, whom plaintiffs are

20 | informed and believe was an employee of The Garibaldi Company, who

21 |

22 |       [2]A landlord may claim from a tenant's security deposit only those amounts as are

23 | reasonably necessary (1) to compensate the landlord for a tenant's default in the
payment of rent; (2) to repair damages to the premises, exclusive of ordinary wear and

24 | tear, caused by the tenant or by a guest or licensee of the tenant; (3) to clean the
premises upon termination of the tenancy as necessary to return the unit to the same

25 | level of cleanliness it was in at the inception of the tenancy; or (4) to remedy future
defaults by the tenant in any obligation under the rental agreement to restore, replace,

26 | or return personal property or appurtenances, exclusive of ordinary wear and tear, if the

27 | security deposit is authorized to be applied thereto by the rental agreement.  California
Civil Code § 1950.5(e).

28 |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

countersigned the lease agreement on behalf of The Garibaldi Company. Pursuant to the agreement, Ms. Macias and Mr. Duran paid $1,700 as a security deposit before commencing their tenancy.  Under the terms of the agreement, The Garibaldi Company agreed to return the $1,700 security deposit by mail within three weeks of the tenants' vacating the unit, less any charges for damage to the premises, fixtures or furnishings, but not including charges for reasonable wear and tear.

18.     *In giving The Garibaldi Company the $1,700 security deposit, Ms. Macias and Mr. Duran reasonably relied on The Garibaldi Company to abide by the terms of its representations in the lease agreement and the law, including California Civil Code § 1950.5(e), and not to charge them for reasonable wear and tear to the unit.*

19.     *The  representation of The Garibaldi Company in the lease agreement that it would not charge Ms. Macias and Mr. Duran for reasonable wear and tear to the unit was false, or made with reckless disregard to its falsity, because The Garibaldi Company intentionally followed a policy and practice of unlawfully charging vacating tenants for reasonable wear and tear to their unit.*

20.     On November 1, 2005, Ms. Macias and Mr. Duran vacated apartment 246.  Before vacating that apartment, Ms. Macias and Mr. Duran requested an initial inspection by defendants.  The purpose of that inspection was to allow Ms. Macias and Mr. Duran the opportunity to remedy deficiencies identified by defendants in order to avoid deductions from his security deposit.  But defendants failed or refused to conduct that inspection in accordance with California Civil Code § 1950.5(f)(1).  At the time that Ms. Macias and Mr. Duran vacated apartment 246, that dwelling had been returned to the same condition, except for normal wear and tear, and same level of cleanliness as it was at the inception of their tenancy.

21.     Nonetheless, defendants unlawfully, and acting in bad faith, charged $2,818.75 for cleaning and damage to apartment 246, deducting that sum from the security deposit paid by Ms. Macias and Mr. Duran. Defendants retained, and continue to retain, the full amount of plaintiffs'

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

4

1   security deposit.  Because the charges exceed the amount of the security
2   deposit, defendants claim that Ms. Macias and Mr. Duran owe defendants
3   $1,160.75.  Defendants have sought to collect those unlawful charges
    from Ms. Macias and Mr. Duran through the use of a collection agency,
4   T.A. Ross Collections.  In July 2006, defendants placed the alleged debt
5   with T.A. Ross Collections for attempted collection.  Since that time, T.A.
6   Ross Collections has made a report to the national credit reporting
    agencies regarding Ms. Macias, stating that the alleged debt is in
7   collection, resulting in a negative mark on Ms. Macias' credit report.
8   (Doc. 19, FAC ¶¶ 17-21 [emphasis added].  See also ¶¶ 22-59.)
9        The allegations contained in plaintiffs' RICO claim further provide:
10       At the commencement of their tenancies at the Rancho Luna & Rancho
11       Sol Apartments, plaintiffs William Laboy, Cuauhtemoc Toral, Teresa
         Villegas, Miguel Acosta, Cruz Acosta, Kapika Salambue and Marina
12       Duran, and the members of the plaintiff class, each paid security deposits
13       to The Garibaldi Company, in reasonable reliance on The Garibaldi
14       Company's representation that it would return those security deposit by
         mail within three weeks of the tenants' vacating the unit, less any charges
15       for damage to the premises, fixtures or furnishings, but not including
16       charges for reasonable wear and tear.  The  representation of The
17       Garibaldi Company in the lease agreement that it would not charge
         plaintiffs for reasonable wear and tear to the unit was false, or made with
18       reckless disregard to its falsity, because The Garibaldi Company
19       intentionally followed a policy and practice of unlawfully charging vacating
20       tenants for reasonable wear and tear to their unit.
21  (Doc. 19, FAC ¶ 71(9).)  Judge White's order described the scheme to defraud alleged
22  by plaintiffs in their RICO claim to be "based on the misrepresentations made to them to
23  induce them to part with their security deposits, and that Garibaldi used the United
24  States mails in furtherance of that scheme by sending them the security deposit closing
25  statements through the mails."  (Doc. 35, p. 3.)
26       Defendants have now filed motions for attorneys' fees and costs.  Prevailing
27  defendants cannot recover attorneys' fees under the RICO statute because that
28  provision only permits plaintiffs to recover fees.  Chang v. Chen, 95 F.3d 27, 28 (9th Cir.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

1   1996).  Instead, defendants seek to recover attorneys' fees based on the following

2   provision contained in the form lease agreement they require new tenants to sign:

3       **ATTORNEY'S FEES AND COSTS:**  Tenant acknowledges that if any
        legal action or proceeding to enforce the terms of this agreement is
4       necessary, the prevailing party in such action is entitled to recovery of a
5       reasonable attorney fee and costs of such action in addition to all other
6       amounts owed, to the extent authorized by state law.

7   (Doc. 38, exh. A, p. 8 of 42.)  That attorneys' fees provision does not support an award

8   of attorneys' fees and costs in this action.

9                              **IV.  SUMMARY OF ARGUMENT**

10          Defendants' motion is based on the erroneous premise that their litigation

11  success on plaintiffs' RICO claims is a victory under California Civil Code § 1717

12  entitling them to prevailing party status and an award of attorneys' fees pursuant to the

13  lease agreements between the parties.  The only victory achieved by defendants was

14  the dismissal with prejudice of plaintiffs' RICO claims based on mail fraud.  There has

15  been no victory "on a contract" entitling defendants to attorneys' fees.  California law is

16  clear that tort claims, including claims based on fraud, are not claims "on a contract,"

17  and that an action based on fraud arising out of a contract is not an action to enforce a

18  contract within the meaning of § 1717.  <u>Santisas v. Goodin</u>, 17 Cal. 4th 599, 615

19  (1998); <u>Stout v. Turney</u>, 22 Cal. 3d 718, 730 (1978).  Thus, defendants' victory on

20  plaintiffs' RICO claim does not give defendants' prevailing party status under § 1717

21  and their motion must be denied in its entirety.  Even if California law was not so clearly

22  in plaintiffs' favor, longstanding legal principles support denial of defendants' motions.

23  If an award of attorneys' fees is found appropriate, however, the amount should be

24  substantially less than that sought by defendants.

25                                    **V.  ARGUMENT**

26      **A.  Defendants' Motions Should be Denied Because They are Not the
        Prevailing Parties on a Contract.**

27          Defendants contend they must be deemed the prevailing parties "on the

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

6

1  contract" pursuant to California Civil Code § 1717 and are entitled to their fees and

2  costs.  (Motion at 6-9.)  Plaintiffs agree with defendants that California law applies to

3  the determination of whether to award fees pursuant to a contract.  Berkla v Corel

4  Corp., 302 F.3d 909, 919, n. 11 (9th Cir. 2002).  Under that law, however, defendants

5  are not entitled to attorneys' fees here.

6      California permits parties to allocate attorney's fees by contract.  See Cal. Civ.

7  Proc. Code § 1021 ("Except as attorney's fees are specifically provided for by statute,

8  the measure and mode of compensation of attorneys and counselors at law is left to the

9  agreement, express or implied, of the parties....").  Parties can agree that attorneys'

10  fees may be recoverable in any action between them, whether based on contract or

11  tort.  Santisas v. Goodin, 17 Cal.4th at 608.  See also 3250 Wilshire Blvd. Bldg. v. W.R.

12  Grace & Co., 990 F.2d 487, 489 (9th Cir. 1993) (applying California law).

13      Whether an agreement contemplated by Code of Civil Procedure § 1021 covers

14  tort claims depends on the wording of the contract.  Provisions providing for attorneys'

15  fees incurred for claims "arising out of" the agreement, or "with respect to the subject

16  matter" of an agreement, are interpreted to allow attorneys' fees to the prevailing party

17  in both tort and breach of contract claims.  See Santisas, 17 Cal.4th at 608; 3250

18  Wilshire Blvd. Bldg., 990 F.2d at 489.  On the other hand, provisions providing for

19  attorneys' fees incurred for claims brought "to enforce" the agreement are limited to

20  fees regarding the contract claims.  Casella v. SouthWest Dealer Services, Inc., 157

21  Cal. App.4th 1127, 69 Cal. Rptr.3d 445, 471 (2007); El Escorial Owners' Ass'n v. DLC

22  Plastering, Inc., 154 Cal. App.4th 1337, 1365 (2007); Gil v Mansano, 121 Cal. App.4th

23  739, 745 (2004).  See also Hasler v. Howard, 120 Cal. App. 4th 1023, 1027 (2004) (fee

24  provision providing for fees in actions "regarding the obligation to pay compensation"

25  did not cover fraud and breach of fiduciary duty claims).

26      **1.  The narrow fee provision in this case applies only to contract claims.**

27

28      The fee provision in the lease agreement in this case applies only to actions "to

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

7

enforce" the terms of the agreement.  (See Doc. 38, exh. A, p. 8 of 42.)  That narrow

language cannot be construed to authorize an award of attorneys' fees to the prevailing

party in actions asserting claims based on fraud or tort, such as plaintiffs' RICO claim.

In apparent recognition of that, defendants make not attempt to argue that their fee

provision applies to fraud or tort claims.  Instead, they claim that they qualify as

prevailing parties under California Civil Code § 1717 because plaintiffs' RICO claim was

"on a contract."  That claim cannot be sustained.

California Civil Code § 1717 provides:

> In any action *on a contract*, where the contract specifically provides
> that attorney's fees and costs, *which are incurred to enforce that contract*,
> shall be awarded either to one of the parties or to the prevailing party,
> then the party who is determined to be the party prevailing on the
> contract, whether he or she is the party specified in the contract or not,
> shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a) (emphasis added).  Section 1717(b)(1) further provides that

the court, upon notice and motion by a party, "shall determine who is the party

prevailing *on the contract for purposes of this section*, whether or not the suit proceeds

to final judgment. . . . [T]he party *prevailing on the contract* shall be the party who

recovered a greater relief in the action *on the contract*. The court may also determine

that there is no party prevailing *on the contract* for purposes of this section."  (Emphasis

added).

Civil Code § 1717 "covers *only* contract actions, where the theory of the case is

breach of contract, and where the contract sued upon itself specifically provides for an

award of attorney fees incurred to enforce *that* contract."  <u>Xuereb v. Marcus & Millichap,</u>

<u>Inc.</u>, 3 Cal. App.4th 1338, 1342 (1992) (emphasis in original).  But when a claim comes

within the scope of § 1717 – that is, causes of action sounding in contract and based on

a contract containing an attorney fee provision) – the provisions (and protections) of §

1717 override the parties' contractual agreement.  <u>Santisas</u>, 17 Cal. 4th at 617.

Therefore, in order to qualify for an award of attorneys' fees under the lease agreement

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

8

1  in this case, defendants must meet the requirements of § 1717.  Because § 1717

2  applies only to claims "on a contract," defendants are forced to argue that plaintiffs'

3  RICO claim is "on a contract" in order to justify bringing their motions.  The law is clear,

4  however, that tort claims, including RICO claims, cannot be construed to be brought "to

5  enforce" a contract within the meaning of § 1717.

6                  **2.  Claims based on fraud, such as RICO, are not "on a contract."**

7          Defendants' argument that they are the prevailing parties in this action pursuant

8  to § 1717 ignores the principal requirement for a successful claim under that statute --

9  the party seeking fees must be a prevailing party "on a contract."  Key to the language

10  of § 1717 is that it applies only to actions "on a contract."  Santisas v. Goodin, 17 Cal.

11  4th at 615.  It does not apply to tort actions or to tort claims within an action.  Id.; Gil v

12  Mansano, 121 Cal. App.4th at 743 (§ 1717 does not apply to tort claims; it determines

13  which party, if any, is entitled to attorneys' fees on a contract claim only).  California law

14  is well-settled that a tort action for fraud arising out of a contract is not an action "on a

15  contract" within the meaning of Civil Code § 1717.  Stout v. Turney, 22 Cal. 3d at 730.

16  See also McKenzie v. Kaiser-Aetna, 55 Cal. App.3d 84, 88-89 (1976) (an action for

17  negligent misrepresentation with regard to a contract is not an action to enforce a

18  contract under § 1717).  Nor can an award of attorneys' fees under § 1717 "be

19  sustained on the theory that the tort claims were brought to 'enforce the terms' of the

20  lease."  Casella v. SouthWest Dealer Services, Inc., 69 Cal. Rptr.3d at 471 (citations

21  omitted).  Tort-based misrepresentation simply is not within § 1717's domain.  Childers

22  v. Edwards, 48 Cal. App.4th 1544, 1549 (1996).[3]

23          Plaintiffs' RICO claims are not claims "on a contract."  There is no question that

24  RICO is founded in tort.  See, e.g., Brady v. Dairy Fresh Products Co., 974 F.2d 1149,

25

26          [3]Because § 1717 is not applicable to tort claims, the cases cited and arguments
27  made by defendants at pages 7-9 of Tomanek's brief showing that they are the
   prevailing parties under § 1717 as a matter of law because of their "unqualified victory"
28  on the federal RICO claim have no application to this proceeding.  (Doc. 37.)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING**
**PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

9

1   1154 (9th Cir. 1992) (holding that traditional respondeat superior and agency principles

2   apply to RICO).  Plaintiff alleged mail fraud as the underlying racketeering activity.  As

3   discussed below, the Ninth Circuit has previously held that a RICO claim was not

4   brought to "enforce" a contract.  See Stitt v. Williams, 919 F.2d 516, 520, 529-30 (9th

5   Cir. 1990).  Therefore, defendants' success in obtaining dismissal of plaintiffs' RICO

6   claims with prejudice cannot support according them prevailing party status under §

7   1717.

8                    **3.  The California Supreme Court's <u>Santisas</u> opinion precludes**
                     **defendants' argument that § 1717 covers any claim "involving" a**
9                    **contract.**

10              Nowhere do defendants acknowledge the fundamental principle, reaffirmed by

11  the California Supreme Court in Santisas, that § 1717 does not apply to claims based

12  on tort or fraud.  Santisas, 17 Cal. 4th at 615.  Instead, defendants simply assert that

13  plaintiffs' RICO claims *are* based on the contract.  Their arguments cannot be

14  sustained.  Specifically, defendants cite In re Baroff, 105 F.3d 439 (9th Cir. 1997), for

15  the proposition that the California courts liberally construe the phrase "on a contract"

16  under § 1717 to extend to any action as long as it involves a contract and one of the

17  parties would be entitled to attorneys' fees under the contract if it prevailed in the

18  lawsuit.  (Motion at 10-11.)  Such a broad construction of § 1717 is no longer valid, if it

19  ever was.  More recently, the Ninth Circuit Bankruptcy Appellate Panel has refused to

20  give effect to the Baroff's broad language regarding what claims are "on a contract"

21  within the meaning of § 1717 because the Baroff decision pre-dates the California

22  Supreme Court's Santisas opinion, cited above, emphasizing the narrow view that §

23  1717 applies *only* to contract claims.  See In re Davison, 289 B.R. 716, 723-24 (9th Cir.

24  B.A.P. 2003) (following Santisas' view on § 1717 rather than Baroff's).  Thus, state law

25  as set forth by the Supreme Court in Santisas precludes the broad application of § 1717

26  to plaintiffs' RICO claim as suggested by defendants.

27              Even if Baroff could be considered good law on what constitutes an action "on a

28  contract" under § 1717, it is distinguishable from this case.  Baroff was a bankruptcy

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

10

1  case involving a nondischargeability action regarding claims that had been released

2  pursuant to a settlement agreement between the plaintiffs and the debtor.  The plaintiffs

3  alleged that, despite the release, certain of the debtor's debts should not be discharged

4  because the release had been obtained through fraud.  The bankruptcy court

5  determined that the settlement agreement precluded the plaintiffs' nondischargeability

6  action and granted summary judgment in favor of the debtor.  Although the settlement

7  agreement contained a provision granting attorneys' fees to the prevailing party in an

8  action to enforce the agreement, the bankruptcy court refused to award fees to the

9  debtor.  Ultimately, the Ninth Circuit reversed.

10         The Ninth Circuit panel recognized that § 1717 did not apply to a tort action for

11  fraud arising out of a contract.  Id. at 443.  It found, however, that the case before the

12  bankruptcy court was to avoid or rescind the agreement, and was therefore "on the

13  contract."  Id. at 442-43.  Moreover, the bankruptcy court had to adjudge the validity of

14  the settlement agreement in order to determine dischargeability.  In this case, the

15  validity of the lease agreements between plaintiffs and defendants is unimportant.  In

16  fact, Judge White's order dismissing plaintiffs' RICO claim does not mention – let alone

17  rely upon – the lease agreement between the parties as being at the heart of plaintiffs'

18  claim.  (Doc. 35.)  The opinion turned on the application of federal statutory law,

19  namely, the mail fraud statute, 18 U.S.C. § 1341, and RICO.  Therefore, even if <u>Baroff</u>

20  was still good law, it would not compel a finding that plaintiffs' RICO claims were "on a

21  contract" within the meaning of § 1717.

                      **4.  Allegations regarding their lease agreements with defendants
22                         does not turn plaintiffs' RICO action into a claim "on a contract."**

23         Despite the clear California law, defendants go on to argue that plaintiffs' RICO

24  claims are "on a contract" because the first amended complaint contains factual

25  allegations regarding the contract and because the dispute concerns plaintiffs' security

26  deposits, which were part of the contract between plaintiffs and defendants.  (Doc. 37 at

27  11-12.)  Although the facts alleged by plaintiffs forming the basis for their RICO (and

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING**
**PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

1  other tort claims) *involve* a contract, the action does not seek to *enforce* a contract.

2  That conclusion is based on the application of traditional tort principles.

3      The facts alleged by plaintiffs, although making reference to the lease

4  agreement, establish the elements for claims based on fraud and deceit.  Those

5  elements are (a) misrepresentation, (b) knowledge of falsity, (c) intent to defraud, i.e., to

6  induce reliance, (d) justifiable reliance, and (e) resulting damage.  Lazar v. Superior

7  Court, 12 Cal. 4th 631, 638 (1996).  "Promissory fraud" is a subspecies of the action for

8  fraud and deceit.  Id.  An action for promissory fraud may lie where a defendant

9  fraudulently induces the plaintiff to enter into a contract.  Id.  Here, Judge White's order

10  described the scheme to defraud alleged by plaintiffs to be "based on the

11  misrepresentations made to them to induce them to part with their security deposits."

12  (Doc. 35, p. 3.)

13      A tort action for fraud arising out of a contract will lie whether or not the

14  underlying contract is itself enforceable.  Restatement (Second) of Torts § 530 cmt. 1(c)

15  (1977).  Even if the contract is enforceable, the plaintiff still has a tort claim for fraud.

16  Id.  A claim arising out of fraudulent inducement is considered to rest upon an

17  independent tortious act – the plaintiff sues not for any breach of contract but for

18  injuries suffered as a result of the defendants' conduct which is separate and distinct

19  from the formal contract.  Price Bros. Co. v. Olin Const. Co., Inc., 528 F. Supp. 716,

20  721 (S.D.N.Y. 1981); Plum Tree, Inc. v. N. K. Winston Corp., 351 F. Supp. 80, 85

21  (S.D.N.Y. 1972).

22      Thus, although a written contract may form the basis for the relationship between

23  plaintiffs and defendants – like in most landlord-tenant relationships – plaintiffs' RICO

24  claim was not brought "to enforce" that contract.  The legal rights asserted by plaintiffs

25  exist regardless of whether the contract provisions are enforceable.  Plaintiffs asserted

26  rights under a federal statute, RICO, a state statute, Civil Code § 1950.5, and for

27  injuries arising out of defendants' scheme of misrepresentation.  If defendants'

28  interpretation is given effect, then every lawsuit between a landlord and tenant must be

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

12

1    considered to be "on a contract" because that is the basis for their relationship.  That is

2    a particularly troubling result because, at least in the residential arena, a rental

3    agreement is usually an adhesion contract the terms of which a tenant has little or no

4    bargaining power over.[4]  Any landlord who tracked statutory language in his form lease

5    agreement could automatically render any tort action by his tenant seeking to assert

6    those statutory right to be "on the contract."  The folly of such an interpretation has long

7    been recognized.  A tort may grow out of or be coincident with a contract. The fact that

8    there exists a contract between the parties does not preclude tort actions between

9    them.  Jones v. Kelly, 208 Cal. 251, 255 (1929).

10       Defendants, nonetheless, contend that the gravamen of plaintiffs' claim is

11   enforcement of a contract, and cite Fairchild v. Park, 90 Cal. App.4th 919 (2001), as

12   authority for determining whether a claim is based on contract or tort.  (Doc. 37 at 12.)

13   Fairchild provides that the nature of the right sued upon must be looked at – "if based

14   on a breach of promise it is contractual; if based on breach of a noncontractual duty it is

15   tortious."  Id. at 924.  That seemingly broad language, however, does not support

16   defendants' argument. The court in Fairchild did not give a full recitation of the

17   recognized standards on which to make a determination whether a cause of action is

18   based on tort or contract.  The source of the language in Fairchild is Voth v. Wasco

19   Public Util. Dist., 56 Cal. App.3d 353, 356 -57 (1976), which further states:

20       If the breach is both contractual and tortious, we must ascertain which
21       duty is the quintessence of the action. If it is unclear, courts generally will
         consider the action to be in contract rather than in tort. [ ]  *However, if the*
22       *action is predicated on a duty independent of the contract, it will be*
23       *deemed to be in tort regardless of the contractual relation of the parties.*
         For example, actions based on a negligent failure to perform a contractual
24       duty owing from a hospital to a patient [ ], from a common carrier to a
25

26       [4]The term "adhesion contract" signifies "a standardized contract, which, imposed
27   and drafted by the party of superior bargaining strength, relegates to the subscribing
     party only the opportunity to adhere to the contract or reject it."  Graham v. Scissor-Tail,
28   Inc., 28 Cal.3d 807, 820 n.16 (1981).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

13

1
2
3
> passenger [ ], from an employer to an employee [ ], and from a landlord to a tenant (<u>Jones v. Kelly</u> (1929) 208 Cal. 251), although containing both contract and tort elements are regarded as [tortious] since the negligence is regarded as the basis of the wrong.

4
<u>Voth</u>, 56 Cal. App.3d at 357 (citations omitted; emphasis added).

5
6
7
8
9
10
11
12
13
Here, plaintiffs' RICO claims were based on duties independent of the lease agreement between the parties. RICO claims do not require an underlying contract, and plaintiffs' RICO claims could have been brought even if the parties had never entered into a formal lease agreement. Plaintiffs sought to enforce duties arising out of tort and statutory duties independent of the lease agreement. RICO provides a federal statutory remedy to persons injured in their property because of racketeering activity – not persons injured by breach of contract. Even if plaintiffs had prevailed on their RICO claim, they would not have "enforced" the contract – they would have obtained damages for their injuries as allowed by the RICO statute, 18 U.S.C. § 1964(c).

14
15
16
17
18
19
20
21
22
23
24
Defendants themselves previously recognized that the gravamen of plaintiffs' case was not breach of contract, but enforcement of statutory duties. In their motion to dismiss plaintiffs' action, defendants consistently described plaintiffs' case, not in terms of the enforcement of a contract, but in the enforcement of a statute – California Civil Code § 1950.5. <u>See</u> Garibaldi's motion to dismiss [doc. 22] at 2 ("The essence of plaintiffs' claim is that defendants violated the California statute that delineates a landlord's rights and obligations with respect to security deposits"), at 4 ("The gravamen of the FAC is that defendants' actions violated California Civil Code § 1950.5, which governs a landlord's handling and disposition of security deposits"), and 13 ("This is a state law case, a dispute between landlord and tenants, founded on alleged violations of California Civil Code § 1950.5").

25
26
27
28
For all of these reasons, California law precludes a finding that plaintiffs' RICO

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

14

claims are claims "on a contract" within the meaning of § 1717.[5]

### 5.  Although a contract may authorize an award of attorneys' fees in a RICO case, the lease agreement in this case does not.

There is no bar to a contractual agreement that allows for attorneys' fees to a prevailing party in a case brought under RICO.  Chang v. Chen, 95 F.3d at 28. Nonetheless, the narrow fee provision in this case cannot support such an award to defendants.  There have been two Ninth Circuit cases involving contractual fee claims by prevailing defendants in RICO actions, Stitt v. Williams, 919 F.2d 516, and Chang v. Chen, 95 F.3d 27.  Both support denying defendants' motions.

In Stitt v. Williams, a group of limited partners sued the general partner alleging violations of RICO, securities violations, and common law fraud.  919 F.2d at 520.  The district court granted summary judgment in favor of the general partner, who then moved for attorneys' fees based on fee provisions in a number of limited partnership agreements, which fell into two categories:  one provided for fees to the prevailing party in any action "to enforce" the partnership agreement, while the other provided fees to the prevailing party in any action "pertaining to Partnership affairs."  Id. at 529-30.  The district court denied the fee motion and, on appeal, the Ninth Circuit affirmed the district court's refusal to allow fees pursuant to the provision allowing fees "to enforce" the agreement.  The Ninth Circuit stated:

> Appellees cannot recover attorneys' fees or costs under this provision

---

[5]Defendants also may attempt to argue that plaintiffs' RICO claim was "on the contract" because the prayer for relief sought declaratory relief and attorneys' fees. (See Doc. 37 at 5 n.4, 6.)  Plaintiffs requested declaratory relief under their RICO claim, seeking "an order declaring unlawful defendants' pattern and practices complained of herein."  (FAC ¶ 73, Prayer ¶ 2.)  Plaintiffs did not seek declaratory relief with respect to the rights or obligations contained in the lease agreements.  And, although plaintiffs did request attorneys' fees in their prayer, plaintiffs never cited the lease agreement as a source for those fees.  Rather, plaintiffs' RICO claim provides for attorneys' fees for the prevailing plaintiff, 18 U.S.C. § 1964(c), and plaintiffs could be eligible for an award of fees under the state private attorney general statute, Civil Code of Civil Procedure § 1021.5.  The relief sought in this case – consistent with plaintiffs' RICO and statutory claims – does not establish that plaintiffs' claims were "on a contract."

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

15

1
2
3
4

> because appellants brought this action not to "enforce" the limited
> partnership agreements but rather to collect damages based on the
> allegedly fraudulent conduct of [the general partner] in connection with the
> partnerships' formation and operation, or, alternatively, to rescind or
> reform the partnership agreements.

5   Id. at 529-30.  Thus, Stitt directly supports a finding that the fee provision at issue here

6   allowing fees "to enforce" the lease agreement does not give rise to a claim for

7   attorneys' fees in a RICO action.

8          In Chang, the plaintiffs' RICO action was dismissed with prejudice for failure to

9   state a claim, and the dismissal was affirmed by the court of appeals.  The prevailing

10  defendants then sought an award of attorneys' fees pursuant to a written contract with

11  the plaintiffs.  The real estate sales contract at issue provided that the prevailing party

12  in any action "arising out of the execution of this agreement or the sale" would be

13  entitled to attorneys' fees.  Chang, 95 F.3d at 28.  In reaching its decision, the Ninth

14  Circuit implicitly recognized that a fee provision covering only contract claims would not

15  support a fee award in a RICO action.  Id.  While it found that the "arising out of"

16  language of the particular fee agreement was broad enough to cover claims for

17  common law fraud, it went on to hold that the language still did not cover federal RICO

18  claims.  Id. at 28-29.  The court's decision turned on the RICO pattern requirement –

19  because RICO requires a pattern of racketeering activity, and no pattern arose out of

20  any one contract, the contractual provision authorizing fees could not apply to fees

21  incurred in a RICO action.  Id.  Therefore, even if the fee provision in Chang could be

22  construed to apply to fraud claims, it could not be construed to apply to RICO claims.

23         Likewise, in this case, because RICO requires proof of a pattern of predicate

24  acts – not just one – and each of the leases here permit an award of attorneys' fees

25  only with respect to that particular agreement, defendants' violation of any one

26  agreement could not give rise to a RICO action (assuming a violation of the agreement

27  could form the basis for plaintiffs' RICO suit, which plaintiffs dispute).  Like in Chang, no

28  one plaintiff in this case executed more than one agreement.  Accordingly, as in Chang,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

16

1    the RICO pattern in this case could not be based on defendants' failure to perform any

2    one lease, and attorneys' fees cannot be awarded to defendants.

3         Defendants also contend that a district court case, International Marble of

4    Colorado v. Congress Financial Corp., 465 F. Supp. 2d 993 (C.D. Cal. 2006), supports

5    an award of fees for plaintiffs' RICO claims in this case.  (Doc. 37 at 12-13.)  It does

6    not.  The fee agreement in that case provided that fees were payable if incurred in

7    connection with enforcement *or* defending any claims made "arising out of the

8    transactions" contemplated in the agreement.  Id. at 1001.  As the district court

9    observed, that fee provision "is about as broad as one can imagine," and it included

10   both contract and tort claims.  Id. at 1002.  Although under the terms of § 1717, the

11   defendant could not recover fees for the contract claim (because they had voluntarily

12   dismissed them), the district court allowed recovery of all fees because the tort and

13   contract claims were intertwined and the tort claims arose out of the transaction

14   contemplated in the parties' agreement.  As discussed above, however, the fee

15   provision in this case is narrow and does not apply to tort claims, let alone RICO claims.

16        Thus, in addition to California case law, Ninth Circuit law precludes consideration

17   of RICO claims to be "on a contract" within the ambit of § 1717 and the lease

18   agreement in this case.

19             **6.  The fee provision in this case, by its terms, cannot apply to this
                  RICO action.**

20

21        Even if a RICO claims could ever be considered to be "on a contract" within the

22   meaning of § 1717, the terms of the agreement at issue here do not support an award

23   of fees.  As discussed above, plaintiffs' RICO claims did not seek enforcement of the

24   lease.  Therefore, the fee provision in the lease agreement, by its terms, does not cover

25   plaintiffs' RICO claims.  The lease provides that "[t]enant acknowledges that *if any legal

26   action or proceeding to enforce the terms of this agreement is necessary*, the prevailing

27   party in such action is entitled to recovery of a reasonable attorney fee and costs of

28   such action."  (Doc. 38, exh. A, p. 8 of 42.)  Plaintiffs' RICO claims cannot be

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

1  considered to be "necessary" to enforce the lease agreement within the terms of the fee

2  provision because enforcement of the contract was unnecessary for plaintiffs to prevail

3  on their RICO claims (or any other statutory or tort claim for that matter).  Therefore, by

4  its terms, the fee provision is not applicable to plaintiffs' RICO claims.

5      **7.  Defendants cannot be deemed to be prevailing parties under §**
   **1717 because there has been no final resolution of any claim "on the**
6   **contract."**

7       Finally, even if § 1717 could be found to apply in this case, and the fee provision

8  itself authorized fees in a RICO action, defendants cannot be considered to be the

9  prevailing parties under § 1717.  It is premature to make a prevailing party

10  determination under § 1717.  Section 1717(b)(1) provides that the "party prevailing on

11  the contract shall be the party who recovered a greater relief in the action on the

12  contract."  The California Supreme Court has instructed that, in order to decide whether

13  there is a "party prevailing on the contract," the trial court must compare the relief

14  awarded *on the contract claim* or claims with the parties' demands on those same

15  claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening

16  statements, and similar sources.  Hsu v. Abbara, 9 Cal. 4th 863, 876 (1995).  The

17  prevailing party determination is to be made "*only upon final resolution of the contract*

18  *claims*," and only by a comparison of the extent to which each party has succeeded and

19  failed to succeed in its contentions.  Id. (emphasis added).  The only claim that even

20  could be considered "on the contract" in plaintiffs' first amended complaint is claim

21  number five, for breach of the implied covenant of good faith and fair dealing, although

22  plaintiffs pled that claim as a tort, seeking damages for emotional distress and punitive

23  damages.  (Doc. 19, ¶¶ 91-96.)

24       Defendants do not argue that the dismissal of their state law claims for lack of

25  subject matter jurisdiction gives them prevailing party status under § 1717.  Nor could

26  they.  As noted by Judge White, plaintiffs still have a potential remedy in state court.

27  (Doc. 35, p. 6.)  Indeed, plaintiffs have refiled their action in the Alameda County

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING**
**PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

1   Superior Court alleging the same operative facts.[6]  Neither the disposition of plaintiffs'

2   RICO claims, as discussed above, nor the dismissal of plaintiffs' state claims for lack of

3   subject matter jurisdiction was a resolution of a claim "on the contract."  Therefore,

4   defendants are not entitled to prevailing party status under § 1717.

5          The Court of Appeal in In re Estate of Drummond, 149 Cal. App.4th 46 (2007),

6   was faced with a situation analogous to this case.  In a nutshell, the case involved

7   contract claims asserted erroneously in probate court, their subsequent dismissal and

8   refiling in civil court, and the motion by the defendants in the probate action (who were

9   also parties in the civil action) for attorneys' fees under a contract provision.  The

10  probate court denied the motion and the court of appeal affirmed.  Citing Hsu, the Court

11  of Appeal concluded that "no fee award can be made" before the final resolution of the

12  claims "on the contract."   Id. at 51.  That final resolution is not just the end of a

13  particular lawsuit, but a final determination on the contract claims.  The appellate court

14  concluded:

> The dismissal of his petition in the probate matter did not defeat his
> contract claims; it merely deflected or forestalled them. By achieving that
> result, appellants no more 'prevailed' than does a fleeing army that
> outruns a pursuing one. Living to fight another day may be a kind of
> success, and surely it is better than defeat. But as long as the war goes
> on, neither side can be said to have prevailed.

20  Id. at 53.  Likewise, in this case, the decision on plaintiffs' RICO claim was not a

21  resolution of any claim "on the contract."  Nor was the dismissal of plaintiffs' state

22  claims for lack of subject matter jurisdiction a final resolution of any claim "on the

23  contract."  Therefore, defendants' cannot be deemed the prevailing parties in this action

24  and defendants' motion should be denied in its entirety.

25

26          [6]Attached hereto as Exhibit 1 is a copy of the file-stamped cover page of
    plaintiffs' complaint filed in Alameda Superior Court on January 17, 2008.  Plaintiffs
27  request that the Court take judicial notice of that state court filing.  Fed. R. Evid.
    201(b)(2).
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

**8.  There is no issue of allocating time spent on tort versus contract claims in this case.**

Defendants make an argument that, because plaintiffs' allegations regarding the contract are intertwined with their fraud claims, that somehow they are entitled to all of their attorneys' fees spent on the entire litigation.  (Doc. 37 at 12-13.)  But, since the RICO claim is not "on a contract," there is no basis for awarding fees or allocating them between tort and contract claims.  In this case, defendants prevailed only on a tort claim to which the fee provision did not apply.  That victory cannot serve to justify an award of attorneys' fees for defense counsel's work on any, much less all, of plaintiffs' claims.

**B.  The Amount of Fees Sought by Defendants Should be Reduced, if Any Are Awarded at all.**

This motion is in an odd procedural posture – the only claim on which defendants prevailed is not a claim on which they may obtain attorneys' fees pursuant to RICO, § 1717 or the lease agreement.  Yet, defendants seek not only fees for the time spent defending the RICO action, but for all time spent on the entire litigation. Even if fees could be recovered, the amount sought is unreasonable.

Plaintiffs do not object to the hourly rates requested by defendants for their counsel, but the number of hours is excessive.  The billing records show that the case was overstaffed.  Defendant Garibaldi seeks $49,962.00 in attorneys' fees for work performed by three attorneys and two paralegals from Farbstein & Blackman, and for three attorneys, one paralegal and two case clerks from Wendel, Rosen, Black & Dean LLP, along with $3,623.87 in costs.  (Declaration of John S. Blackman [doc. 41] ["Blackman Dec."] ¶¶ 4-6; Declaration of Carl D. Ciochon [doc. 42] ["Ciochon Dec."] ¶¶ 3-4.)  Defendant Tomanek seeks $35,664.00 in fees for work performed by one attorney from Allman & Nielsen and one attorney from Wilson & Quint, LLP, and $187.53 in costs.  (Declaration of Sara B. Allman [doc. 38] ["Allman Dec."] ¶¶ 5-7; Declaration of Matthew F. Quint [doc. 39] ["Quint Dec."] ¶ 3.)

The time records show the following time that can reasonably be allocated to the RICO claim:

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

20

1    • Between August 17, 2007, and September 14, 2007, Garibaldi's

2    counsel (4 attorneys) spent 65.7 hours preparing their motion to dismiss

3    plaintiffs' complaint [doc. 11] and coordinating that motion with defendant

4    Tomanek.[7]

5    • Between August 17, 2007, and September 14, 2007, Tomanek's

6    counsel spent 26.8 hours preparing their motion to dismiss plaintiffs'

7    complaint [doc.7] and coordinating their motion with counsel for defendant

8    Garibaldi.[8]

9    • Between September 18, 2007, and October 18, 2007, defendant

10   Garibaldi's attorneys spent another 19.3 hours preparing their motion to

11   dismiss plaintiffs' first amended complaint [doc. 22] and coordinating that

12   motion with defendant Tomanek's counsel.[9]

13   • Between September 18, 2007, and October 18, 2007, defendant

14   Tomanek's attorneys spent 13.5 hours preparing their motion to dismiss

15   plaintiffs' first amended complaint [doc. 20] and coordinating that motion

16   with defendant Garibaldi's counsel.[10]

17

18   _____

19   [7]John Blackmun – 29.2 hours ([doc. 41] entries 8/17/07, 8/20/07, 8/21/07,
8/22/07, 8/23/07, 8/27/07, 8/28/07, 8/29/07, 9/5/07, 9/6/07, 9/13/07, 9/14/07); Peggy

20   Burton – 13.5 hours ([doc. 41] entries 8/21/07, 8/22/07, 8/23/07); Gary Gleason – 0.3
hours ([doc. 41] entry 8/21/07); and Carl Ciochon – 22.7 hours ([doc. 42] entries

21   8/21/07, 8/22/07, 8/23/07, 8/24/07, 9/5/07, 9/10/07, 9/11/07, 9/12/07, 9/13/07).

22   [8] Sara Allman – 16.4 hours ([doc. 38] entries 8/27/07, 9/4/07, 9/5/07, 9/6/07,

23   9/11/07, 9/12/07, 9/13/07); and Matthew Quint – 10.4 hours ([doc. 39] entries 8/22/07,
8/23/07, 8/27/07, 9/4/07, 9/5/07, 9/10/07, 9/11/07, 10/5/07, 9/13/07, 9/14/07).

24   [9]John Blackmun – 5.0 hours ([doc. 41] entries 10/11/07, 10/16/07); and Carl

25   Ciochon – 14.3 hours ([doc. 42] entries 10/1/07, 10/2/07, 10/11/07, 10/12/07, 10/15/07,

26   10/16/07, 10/18/07).

27   [10]Sara Allman – 6.8 ([doc. 38] entries 9/18/07, 10/1/07, 10/2/07, 10/3/07,
10/11/07, 10/16/07, 10/8/07), and Matthew Quint – 6.7 hours ([doc. 39] entries 10/1/07,

28   10/2/07, 10/3/07, 10/11/0710/12/07, 10/15/07).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

21

1    • Counsel for defendant Garibaldi then spent another 22.9 hours in

2    preparing their reply brief [doc. 31] and in coordinating their reply with

3    defendant Tomanek's attorneys.[11]

4    • And, counsel for defendant Tomanek then spent another 7.9 hours in

5    preparing their two-page reply brief [doc. 32] and in coordinating their

6    reply with defendant Garibaldi's attorneys.[12]

7   That is the time that reasonably can be allocated to defense of plaintiffs' RICO claims.

8   The other time spent on plaintiffs' related state claims and factual investigation will be

9   equally applicable in the new state case and is, in fact, separable from the RICO

10  claims.  The hours spent on the RICO claim, multiplied by the billers applicable hourly

11  rate as set forth in defense counsels' declarations are as follows:

12      Sara Allman  $165 per hour x 28.7 =        $   4,735.50

13      Matt Quint $ 400 per hour x 19.5 =             7,800.00

14      John Blackman $185 per hour x 36.2 =          6,697.00

15      Peggy Burton $185 per hour x 13.5 =           2,497.50

16      Gary Gleason $185 per hour x 0.3 =               55.50

17      Carl Ciochon $325 per hour x 57.9 =           18,817.50

18                          Total:        $40,603.00

19      Of that time, however, the individual billing entries are replete with conferences,

20  emails and correspondence between defense counsel.  (See, for example, Quint Dec.,

21  [doc. 39]  p. 7, 8/23/07 ["Numerous e-mails and telephone conference to and from [co-

22  counsel"]; Ciochon Dec., exh. 1 [doc. 42-2], p. 8, 8/23/07 ["Analyze RICO authorities; e-

23  mails with counsel [*redacted*] telephone with J. Blackman; conference call with S.

24      [11]Carl Ciochon 20.9 hours ([doc. 42] entries 11/13/07, 11/14/07, 11/15/07,

25  11/16/07, 11/19/07, 11/20/07, 11/21/07, 11/26/07), and John Blackman 2.0 hours ([doc.
    41] entry 11/13/07).

26

27      [12]Sara Allman – 5.5 hours ([doc. 38] entries 11/12/07, 11/15/07, 11/16/07,
    11/19/07, 11/26/07), and Matthew Quint – 2.4 hours ([doc. 39] entries 11/19/07,
28  11/26/07, 11/28/07).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

22

1   Allman, M. Quint, and J. Blackman"]; Ciochon Dec., exh. 1 [doc. 42-2], p. 11, 9/11/07

2   ["Revise draft motion to dismiss; e-mail to J. Blackman [*redacted*] telephone with J.

3   Blackman [*redacted*] e-mails with M. Quint and S. Allman [*redacted*] e-mail to S.

4   Allman"]; Blackman Dec., [doc. 41] p. 23, 10/11/07 ["Prepare correspondence to S.

5   Allman, M. Quint and C. Ciochon; conference call with S. Allman, C. Ciochon and M.

6   Quint"].)  Defendants make no attempt to justify the number of attorneys working on the

7   case, or to establish that the work performed was not redundant, excessive or

8   unnecessary.[13]

9          Accordingly, the time sought by defendants should be reduced by at least 50% to

10  account for the excessive and redundant billing, bringing the lodestar to $20,301.50.

11                          **VI.  CONCLUSION**

12         Because defendants fail to come within the meaning of a prevailing party

13  pursuant to California Civil Code § 1717, and attorneys' fees are not otherwise available

14  to defendants, their motions for fees and costs should be denied in their entirety.

15  Defendants have not filed a bill of costs.  The only costs awardable to them are those in

16  connection with the contractual fee agreement.  Because defendants are not entitled to

17  fees under that agreement and § 1717, they are not allowed non-taxable costs.  For all

18  of these reasons, the Court should deny defendants' motions to be declared the

19  prevailing parties and deny their requests for attorneys' fees and costs.  If the Court

20  //

21  //

22  //

23  //

24  //

25  //

26

27         [13]And no attempt to set forth the qualification of any attorneys' or paralegals,
    other than the declarants themselves.  (Blackman Dec. [doc. 41] ¶ 3-9; Ciochon Dec.
28  [doc. 42] ¶ 2-4.)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING
PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW

23

1  finds that attorneys' fees are awardable under the contract and § 1717, then it should

2  award a reduced lodestar of $20,301.50, plus the costs sought.

3          Dated:  January 30, 2008.

4                                        Respectfully submitted,

5                                        BRANCART & BRANCART

6

7                                        /s/ _____

8                                        Christopher Brancart
                                         Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO BE DECLARED PREVAILING**
**PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS - Case No. C 07-3437 JSW**

24

**EXHIBIT 1**

1   BRANCART & BRANCART
       Christopher Brancart (SBN 128475)
2       cbrancart@brancart.com
       Elizabeth Brancart (SBN 122092)
3       ebrancart@brancart.com
       *Mailing Address:*
4   Post Office Box 686
       Pescadero, CA   94060
5   *Street Address:*
       8205 Pescadero Road
6   Loma Mar, CA   94021
       Tel:   (650) 879-0141
7   Fax:   (650) 879-1103

8   Attorneys for Plaintiffs

9

ENDORSED
FILED
ALAMEDA COUNTY

JAN 1 7 2008

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

**SUPERIOR COURT OF CALIFORNIA**

10

**COUNTY OF ALAMEDA**

11

12   **EDITH MACIAS, individually and on
       behalf of similarly situated
13   individuals; HOTON DURAN;
       TIFFANY HUYNH; AURA MENDIETA;
14   WILLIAM LABOY; MIGUEL ACOSTA;
       CRUZ ACOSTA; CUAUHTEMOC
15   TORAL; TERESA VILLEGAS,
       KAPIKA SALAMBUE; and MARINA
16   DURAN,**

17          **Plaintiffs,**

18      **vs.**

19   **THOMAS J. TOMANEK; and
       MARK GARIBALDI, individually
20   and doing business as THE
       GARIBALDI COMPANY,**

21

22          **Defendants.**

Case No.  **08366602**

**CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF**

1)   **Violation of CC § 1950.5**
2)   **Violation of B&P Code § 17200**
3)   **Fraud**
4)   **Unjust Enrichment**
5)   **Defamation**

**JURY TRIAL DEMANDED**

**[CLASS ACTION]**

BY FAX

23                        **I.  INTRODUCTION**

24          1.       In this action, plaintiffs, former tenants of the Rancho Luna & Rancho Sol

25   Apartments, a large rental complex located in Fremont, California, claim that defendant

26   Thomas J. Tomanek and defendant Mark Garibaldi, doing business as The Garibaldi

27   Company, have engaged in unlawful and unfair business practices in the operation and

28

**CLASS ACTION COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF**

1

## PROOF OF SERVICE

2

I am over the age of 18 and am not a party to the within action.  My business address is 8205 Pescadero Road, Loma Mar, California  94021.

3

4

On January 30, 2008, I served a true and correct copy of the following document(s):

**PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTIONS TO BE DECLARED PREVAILING PARTIES AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

5

6

upon the following person(s):

7

Ms. Sara Allman, Allman & Nielsen, 100 Larkspur Landing Circle, Suite 212 Larkspur, CA 94939; and

8

9

Mr. John S. Blackman, Farbstein & Blackman, 411 Borel Ave., Suite 425, San Mateo, CA   94402

10

11

| | |
|---|---|
| | **BY HAND DELIVERY**:  By causing such document(s) to be delivered by hand to the above person(s) at the address(es) set forth above. |
| | **BY MAIL**:  By placing a copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Loma Mar, California, addressed as set forth above. |
| | **BY THIRD-PARTY COMMERCIAL CARRIER (OVERNIGHT DELIVERY)**:  By delivering a copy thereof to a third-party commercial carrier, addressed as set forth above, for delivery on the next business day. |
| | **BY FACSIMILE**:  By transmitting the above document(s) to the facsimile number(s) of the addressee(s) designated above. |
| xx | **BY ELECTRONIC TRANSMISSION OF THE "NOTICE OF ELECTRONIC FILING:"** By electronically filing the document(s) (All counsel are "Filing Users") |

12

13

14

15

16

17

18

19

I certify that I am employed in the office of a member of the bar of this court at whose direction the service was made.

20

Executed on January 30, 2008, at Loma Mar, California.

21

22

/s/ Christopher Brancart
Christopher Brancart

23

24

25

26

27

28